## S00A1792. HAMMOND v. THE STATE.
### (542 SE2d 498)

BENHAM, Chief Justice.

Appellant Eugene Hammond was convicted of aggravated assault and making terroristic threats in connection with a domestic disturbance between him and his wife, Cynthia Carstarphen Hammond, and felony murder (aggravated assault) in connection with the death of the couple's 16-year-old son, Carl Carstarphen.[1] On appeal,

---

[9] *Wall v. State*, 269 Ga. 506, 509 (500 SE2d 904) (1998).

[1] The incidents occurred in the early morning hours of June 22, 1999. Appellant was arrested the same day and indicted during the July 1999 term of the DeKalb County grand jury. Appellant's trial commenced February 14, 2000, and concluded with the jury's return of its verdicts on February 17. His sentences of life imprisonment for the felony murder, a consecutive ten-year term of imprisonment for the aggravated assault, and a concurrent five-

appellant takes issue with the sufficiency of the evidence presented against him, several trial court rulings during voir dire, the denial of appellant's motion to sever offenses, and the trial court's determination that appellant's post-arrest statement to the investigating detective was freely and voluntarily given. After reviewing the record and transcript of appellant's prosecution, we affirm.

The State presented evidence that appellant fired a Ruger 9mm pistol at his son in the family home, and that Carl Carstarphen died as a result of a gunshot wound to the abdomen, the bullet entering the abdomen and exiting the victim's back. The victim's teen-aged sister testified that appellant and his wife had been arguing the evening her brother was shot, and that she had seen appellant with a knife and had heard him threaten his wife with decapitation. The sister further testified that, fearing her father would harm her mother, she had snuck upstairs while her parents argued, retrieved a .38 caliber pistol from her mother's purse, and returned downstairs to her brother's room. There, Carl took the gun from the place his sister put it, told her to call for emergency help, and went upstairs. Shortly thereafter, Carl, bleeding from his fatal wound, stumbled down the stairs. Appellant, while preparing to drive Carl to the hospital, stated he had shot the victim.

The investigating detective interviewed Mrs. Hammond the night of the shooting and testified that she had a swollen lip with dried blood on it and that she had told him appellant had threatened to slit her throat and had gotten a knife from the kitchen. In a statement to police following his arrest, appellant stated he had been in his bedroom when he heard a gunshot and got his Ruger pistol from a dresser drawer. Appellant told police that Carl then kicked the bedroom door open and appellant fired a shot through the wall, striking Carl. Appellant denied threatening his wife with a knife. Law enforcement officers testified that, in the six months preceding Carl's death, they had responded to three domestic violence calls in which appellant was accused of assaulting his wife.

1. The evidence was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that appellant committed the offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA §§ 16-5-1 (c); 16-5-21 (a); 16-11-37 (a).

2. Appellant finds fault with several rulings made by the trial court regarding the voir dire examination of prospective jurors. The

year term of imprisonment for the terroristic threats were filed March 10. A motion for new trial was filed by appellate counsel on April 6, and was denied on June 1. Appellant's notice of appeal was filed June 29, and his appeal was docketed in this Court on July 20, 2000. It was submitted for decision on briefs.

trial transcript reflects that 40 venirepersons were impaneled and administered the preliminary voir dire oath. Twelve members of the venire were seated in the jury box, with the remaining veniremembers seated in three rows in the courtroom. The trial court inquired of the group en masse to determine whether any of the 40 panel members was disqualified from serving as a jury by consanguinity (see OCGA § 15-12-135); by employment as a law enforcement officer (see *Hutcheson v. State*, 246 Ga. 13 (1) (268 SE2d 643) (1980)); or by propter affectum. See OCGA § 15-12-164. The trial court then turned the voir dire examination over to the attorneys, telling the venirepersons to raise a hand when he/she had an affirmative answer to a question asked by any of the attorneys so that the respondent's juror number could be ascertained. Defense counsel and the assistant district attorney then asked questions of the 40-member panel. After completion of the en masse questioning by the ADA and defense counsel, the attorneys addressed questions to each individual venireperson seated in the jury box. After the twelfth juror was questioned, jurors 1-12 vacated the jury box and were replaced by jurors 13-24. When questioning of Juror 24 was completed, jurors 25-36 were seated in the jury box and questioned. Jurors 37-40 followed them. After Juror 40 was questioned, a luncheon recess was taken, followed by a 20-minute recess. The attorneys then silently exercised their strikes, with each side being given one minute to exercise each strike, while the trial court talked with the venire.

(a) Appellant takes issue with the trial court's denial of defense counsel's request that the general as well as the individual voir dire questions be propounded to the venirepersons while seated in the jury box in panels of 12. OCGA § 15-12-131 states:

> In the examination of individual jurors by counsel for the parties . . . as provided in . . . Code Section 15-12-133, . . . it shall be the duty of the court, upon the request of either party, to place the jurors in the jury box in panels of 12 at a time, so as to facilitate their examination by counsel.

Appellant points out that, upon a party's request, the trial court is required to put the jurors in the jury box in groups of 12 for the examination of individual jurors because the statute does not provide for the exercise of judicial discretion in this matter. *Raven v. State*, 256 Ga. 366 (2) (349 SE2d 383) (1986); *Mathis v. State*, 176 Ga. App. 362 (336 SE2d 299) (1985); *Lett v. State*, 160 Ga. App. 476 (1) (287 SE2d 384) (1981).

The purpose of § 15-12-131 is to remove difficulties and impediments from the effort of ascertaining juror impartiality. *Mathis v. State*, supra, 176 Ga. App. at 363. The statute attempts to mitigate

the problems inherent in questioning a large number of people by dividing the jury panel into more manageable groups of 12 and placing each twelvesome under scrutiny in a location distinct from the remaining panel members. However, the trial court may exercise discretion concerning the identity of the propounder of voir dire questions and whether those questions are posed to the jury panel en masse, to each panel of 12, or to each juror individually. See *State v. Hutter*, 251 Ga. 615, 617 (307 SE2d 910) (1983). But see *Lahr v. State*, 239 Ga. 813 (4) (238 SE2d 878) (1977), where this Court ruled out the possibility of en masse questioning of the venire by counsel. In the case at bar, the trial court was statutorily authorized to pose "the usual voir dire questions" to the prospective jurors en masse. See OCGA § 15-12-133 which states that the individual examination of each juror "shall be conducted . . . after the usual voir dire questions have been put by the court." See also *Whitlock v. State*, 230 Ga. 700 (5) (198 SE2d 865) (1973), where this Court noted that § 15-12-133 gives "counsel the right to examine jurors individually after the usual voir dire questions have been put by the trial court to the jury as a panel." Furthermore, the trial court's decision to have counsel pose their general voir dire questions to the panel as a whole was not an abuse of discretion (*State v. Hutter*, supra; see also *Walker v. State*, 271 Ga. 328 (2) (519 SE2d 670) (1999); Uniform Superior Court Rule 10.1), especially since the general questioning was followed by the opportunity to inquire further of each individual juror. See *Brown v. State*, 218 Ga. App. 469 (2) (462 SE2d 420) (1995).

(b) Appellant next finds fault with the trial court's denial of his pre-trial motion to have up to one hour to prepare for jury selection after the voir dire examination was completed, and to have two minutes in which to exercise each peremptory challenge.[2] See USCR 11. Rule 11 provides for a minimum of 15 minutes to prepare for jury selection, and authorizes the trial court to require that each peremptory challenge be exercised in a time period of at least one minute.[3] In the case at bar, the voir dire examination was separated from the beginning of jury selection by a luncheon recess of unspecified duration, followed by a 20-minute recess. Since the conclusion of the voir

---

[2] When the trial court denied the requests, the court stated it would give "a break that's required by the rules, but I will not give you an hour. I will not give you two minutes in which to exercise peremptory challenges, the rules say one minute. So, you have one minute."

[3] USCR 11 states:
After completion of the examination of the jurors upon their voir dire, the parties and their counsel shall be entitled, upon request, to 15 minutes to prepare for jury selection; thereafter, during the selection of jurors, the court in its discretion, upon first warning counsel, may restrict to not less than 1 minute the time within which each party may exercise a peremptory challenge; a party shall forfeit a challenge by failing to exercise it within the time allowed.

dire examination and beginning of the jury selection were separated by a recess in excess of the minimum 15 minutes provided by USCR 11, we see no abuse of discretion in the trial court's action. While the trial court stated that counsel had one minute to exercise each strike, the record does not reflect that the stated time limitation was enforced or that counsel for appellant was unable to act within the time limitation. Accordingly, we are unable to say that the trial court abused its discretion in setting the one-minute limitation.

(c) Lastly, appellant sees error in the trial court's denial of defense counsel's request that he be permitted to ask the venirepersons certain questions defense counsel had submitted in writing to the trial court. See OCGA § 15-12-133. Pursuant to the trial court's request, defense counsel submitted a copy of 91 voir dire questions he proposed to ask. The trial court disallowed 37 of the submitted questions. On appeal, appellant admits the trial court was correct on some of the exclusions, though he does not state which, and contends that the remainder, again without identifying them, were erroneously excluded since their subject matter fell within the framework set out in OCGA § 15-12-133.[4] Since the scope of voir dire and the propriety of particular questions are best left to the sound discretion of the trial court (*Pace v. State*, 271 Ga. 829 (14) (524 SE2d 490) (1999)), and appellant has not set out which excluded questions were erroneously disapproved, we cannot say that the trial court abused its discretion in ruling as it did.

3. Appellant contends the trial court erred when it denied his motion to sever those offenses in which appellant's wife was the victim (aggravated assault and terroristic threats) from those offenses in which appellant's son was the victim (malice murder and felony murder). Appellant contends the severance was necessary because evidence of prior difficulties between appellant and his wife, while pertinent to the charges in which the wife was the victim, amounted to impermissible bad character evidence with regard to the charges in which appellant's son was the victim.

Where, as here, two or more charges are joined because they constitute a series of acts connected together, severance of the charges is within the trial court's sound discretion. *Bland v. State*, 264 Ga. 610 (2) (449 SE2d 116) (1994). All the crimes took place within a very

---

[4] The statute provides:

[C]ounsel for either party shall have the right to inquire of the individual jurors examined touching any matter or thing which would illustrate any interest of the juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the juror might have respecting the subject matter of the action or the counsel or parties thereto, and the religious, social, and fraternal connections of the juror.

short period of time, with the crimes committed against appellant's wife motivating the murder victim to put himself in the place where appellant inflicted the fatal injury upon him. Inasmuch as it is unlikely that the murder would have occurred but for the crimes against the wife, appellant's actions against his wife were inextricably bound to his actions against his son. See *Camphor v. State*, 272 Ga. 408 (3) (529 SE2d 121) (2000); *Sirmans v. State*, 244 Ga. App. 252 (3) (534 SE2d 862) (2000). Accordingly, the trial court did not abuse its discretion when it refused to sever the charges.

4. Lastly, appellant contends the trial court erred when it concluded that appellant's incriminating statement given to the investigating detective the day after the victim died was freely and voluntarily given. Appellant contends he was subjected to the questioning which led to the inculpatory statement after he had invoked his right to counsel. See *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981); *Gissendaner v. State*, 269 Ga. 495 (500 SE2d 577) (1998). However, after conducting the *Jackson-Denno* hearing, the trial court found not credible appellant's testimony that he had asked to speak to an attorney. Since the credibility determinations made by a trial court following a *Jackson-Denno* hearing are accepted by the appellate court unless shown to be clearly erroneous (*Williams v. State*, 267 Ga. 771 (5) (482 SE2d 288) (1997)), and no such showing has been made in the case at bar, we conclude, as did the trial court, that the statement was freely and voluntarily given and could be presented to the jury.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 16, 2001.

*Darel C. Mitchell*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Tammie J. Philbrick, Assistant Attorney General*, for appellee.