In the Supreme Court of Georgia

Decided: November 2, 2015

S15A1057. HURT v. THE STATE.

HUNSTEIN, Justice.

Appellant Kortez Hurt was convicted of felony murder and associated crimes in connection with the shooting death of Michael Ray. Hurt now appeals his convictions on the grounds that the trial court allowed the State to elicit inadmissible hearsay testimony, that the trial court abused its discretion when it refused to ask three of Hurt's proposed voir dire questions, and that trial counsel was ineffective. Though we find no merit in Hurt's enumerations, we do find error in certain aspects of Hurt's sentences, and we must, therefore, vacate and remand for resentencing.[1]

---

[1] In November 2009, a Fulton County grand jury returned a ten-count indictment charging Hurt with offenses arising from the July 2009 murder and from the discovery of drugs and a firearm in an August 2009 search of Hurt's residence. The indictment charged as follows: malice murder; felony murder predicated on aggravated assault; felony murder predicated on possession of a firearm by a convicted felon; aggravated assault with a deadly weapon; possession of a firearm during the commission of a felony (aggravated assault); possession of a firearm by a convicted felon in July 2009; possession of cocaine; possession of marijuana; possession of a firearm during the commission of a felony (a violation of the Controlled Substances Act); and, possession of a firearm by a convicted felon in August 2009. Following a four-day trial in November 2011, a jury found Hurt guilty

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. Law enforcement officers discovered the victim dead in a drug house in Fulton County where he had been selling drugs; the victim was shot once in the head. The exact time of the victim's death is unknown, but the victim's cellular telephone records reflect that he last placed or received a telephone call at 11:49 p.m. on July 7, 2009, and the medical examiner testified that the victim likely died between 12 a.m. and 1 a.m. on July 8, 2009.

Tiequan Woods, the owner of the drug house and a friend of the victim, reported to investigators that Hurt called him on the night of the murder to ask if he could purchase drugs at the location and that he, Woods, was unable to

of all offenses except malice murder. Hurt was sentenced to life imprisonment for felony murder predicated on aggravated assault; five years for possession of a firearm during the commission of a felony, (aggravated assault); thirty years, with ten to serve, for possession of cocaine; ten years suspended for possession of marijuana; five years for possession of a firearm during the commission of a felony (a violation of the Controlled Substances Act); and five years for possession of a firearm by a convicted felon in August 2009. These sentences run consecutively, for a total sentence of life plus twenty-five years. Although the trial court purportedly merged all the other offenses, as discussed in division (5) below, this was error. Hurt filed a timely motion for new trial on November 16, 2011, which he amended through new counsel on January 14 and April 6, 2013. Following a hearing, the amended motion was denied on August 14, 2013. Hurt filed his notice of appeal on August 21, 2013. This appeal was docketed to the April 2015 term of this Court and was thereafter submitted for decision on the briefs.

contact the victim later that night. Woods also reported to investigators that Hurt had confessed to Montez Freeland to committing the murder. In the presence of investigators, Woods telephoned Freeland, and Freeland again relayed the substance of Hurt's confession to Woods; the telephone call was recorded by investigators. According to Freeland, Hurt admitted going to Woods' drug house and shooting the victim in the head "with a 40" because the victim "bucked" when Hurt produced a pistol while attempting to rob him. Investigators later conducted recorded interviews with Freeland on two different occasions – once in July 2009 and once in September 2009 – and, in both interviews, Freeland again recounted the details of Hurt's confession. In his September 2009 interview, Freeland reported that Hurt had admitted shooting the victim once when the victim reached for Hurt's pistol; detailed how Hurt came to be in possession of the .40 caliber pistol; discussed why Hurt did not dispose of the pistol after the murder; and explained that Hurt robbed the victim because he owed money to others.

A search of Hurt's residence yielded cocaine, marijuana, and a .40 caliber pistol later determined to be the murder weapon. In his interview with investigators, Hurt admitted contacting Woods to purchase drugs on the night

3

of the murder, being at the drug house between 11 p.m. and 1 a.m., and owning the murder weapon. Hurt maintained, however, that he obtained the pistol after the murder. While in custody, Hurt was recorded discussing with his girlfriend a plan to connect the pistol to Freeland, and Hurt's girlfriend reported to investigators that the pistol belonged to Freeland. Hurt's girlfriend later pled guilty to making a false statement, and she testified at trial that the pistol belonged to Hurt, but she also testified that she did not know the details about how Hurt came into possession of the pistol.

Freeland, too, appeared at trial as a witness for the State, but he was insistent that he did not want to testify, and he largely maintained that he did not know anything or that he could not remember anything.[2] The State subsequently elicited testimony from Woods and Investigator Nicole Esquilin regarding Hurt's confession to Freeland; the State also adduced, without objection, the recordings of Freeland's phone call with Woods and Freeland's recorded interviews with investigators.

---

[2] During his in-court testimony, Freeland denied any association with Woods, denied having any knowledge about Woods' drug house, denied knowing what kind of weapon Hurt had, denied speaking to Hurt after the murder, and, when asked whether Hurt confessed to shooting the victim, Freeland responded "Nah. I don't remember that."

4

1. Though Hurt has not enumerated the general grounds, we have concluded that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Hurt first argues that the trial court allowed inadmissible testimony from Woods and Investigator Esquilin concerning Freeland's statement to Woods about Hurt's confession; the testimony was admitted as evidence of a prior inconsistent statement made by Freeland. According to Hurt, however, the State failed to show that Freeland's trial testimony was inconsistent with his prior statement to Woods, and the State failed to lay a proper foundation for Woods' testimony regarding his conversation with Freeland. He also argues that Investigator Esquilin's testimony included an additional layer of inadmissible hearsay not addressed by the State.

As an initial matter, none of these contentions are preserved for our review. Trial counsel objected to the testimony at issue on the basis that it was "hearsay," and then, in response to the State's contention that the testimony was admissible as a prior inconsistent statement, argued only that "[Freeland] said

5

he didn't remember anything."  However, "[i]n order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground."  (Citation and punctuation omitted.) Sanchez v. State, 285 Ga. 749, 751 (3) (684 SE2d 251) (2009).  Further, objections must be made "with specificity to enable the trial court to intelligently rule on the objection and to create a clear record for the appellate court."  Tolver v. State, 269 Ga. 530, 532 (2) (500 SE2d 563) (1998).  We conclude that the objections here failed to specifically raise that Freeland's trial testimony was not inconsistent with his prior statement to Woods, that the State failed to lay the proper foundation for the testimony, or that Investigator Esquilin's testimony included an additional layer of inadmissible hearsay.

Nevertheless, even if these issues were preserved for our review, the substance of the testimony here is merely cumulative of other properly admitted evidence.  As discussed above, the trial court admitted, without objection, Freeland's recorded telephone conversation with Woods and Freeland's recorded interviews with police, all of which discuss Hurt's confession to

Freeland.[3]  Accordingly, it is highly probable that any error here did not contribute to the verdict and, thus, any error was harmless.  See Bulloch v. State, 293 Ga. 179 (3) (a) (744 SE2d 763) (2012) (any error in admission of hearsay testimony was harmless, where testimony was cumulative of other properly admitted evidence).

3.  Hurt also alleges that his trial counsel was ineffective for failing to object to the admission of Freeland's various recorded statements and to inadmissible hearsay testimony from Investigator Esquilin.

To establish ineffective assistance of counsel, a defendant must show that (1) his trial counsel's performance was professionally deficient and (2) but for such deficient performance there is a reasonable probability that the result of the trial would have been different.  Strickland v. Washington, 466 U. S. 668, 695, (104 SCt 2052, 80 LEd2d 674) (1984); Wesley v. State, 286 Ga. 355(3) (689 SE2d 280) (2010).  To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms."  Romer v.

---

[3] Hurt's confession to Freeland was admissible as an admission against Hurt's penal interest because his confession was the admission of a party opponent.  See Stanford v. State, 272 Ga. 267, 270 (4) (528 SE2d 246) (2000).

7

State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). "[T]o show that he was prejudiced by the performance of his lawyer, [Hurt] must prove 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Arnold v. State, 292 Ga. 268, 269 (2) (737 SE2d 98) (2013) (quoting Strickland, 466 U. S. at 694 (III)). With these well-established principles we now address each of Hurt's contentions.

(a) The trial court admitted, without objection, Freeland's September 2009 video-recorded interview with investigators. Hurt argues, however, that the State failed to lay the proper foundation for the admission of the interview as a prior inconsistent statement and that trial counsel was ineffective for failing to object on that ground. The State contends, as it did below, that the interview was properly admitted as a prior inconsistent statement.

Freeland testified the he either did not know or did not remember the details of Hurt's confession. Under the law in effect at the time of Hurt's trial, the State was required to meet three requirements before impeaching Freeland with the September 2009 interview. See former OCGA § 24-9-83; Duckworth

8

v. State, 268 Ga. 566 (492 SE2d 201) (1997).[4] "First, the prior statement must contradict or be inconsistent with the witness's in-court testimony; second, the prior statement must be relevant to the case; and, third, the examining attorney must lay the proper foundation with the witness." Id. at 567. Regarding the first requirement, "the fact that the witness admits that he or she made the inconsistent pre-trial statement does not render it inadmissible," Warner v. State, 281 Ga. 763, 766 (3) (642 SE2d 821) (2007), and "testimony that a witness does not recall certain details which have previously been included in a prior statement is inconsistent with the prior statement about those details." Cummings v. State, 280 Ga. 831, 832 (2) (632 SE2d 152) (2006). With respect to laying the foundation in accordance with the third requirement, "the time, place, person, and circumstances attending the former statements shall be called to [the witness'] mind with as much certainty as possible. If the contradictory statements are in writing and in existence, they shall be shown to him or read in his hearing." Former OCGA § 24-9-83. The foundation requirement is designed to allow the witness an opportunity to admit, explain, or deny the prior

---

[4] OCGA § 24-9-83, which was in effect at the time of Hurt's trial, was repealed effective January 1, 2013. The use of prior inconsistent statements for the purpose of impeachment is now codified at OCGA § 24-6-613(b).

contradictory statement. Duckworth, 268 Ga. at 567-568. "In Georgia, the prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible both to impeach the witness and as substantive evidence." Rivers v. State, 296 Ga. 396, 403 (9) (768 SE2d 486) (2015).

Here, after an uncooperative Freeland gave testimony inconsistent with his September 2009 interview with investigators, the State asked him whether he remembered the interview and asked him specific questions regarding the content of that interview; although Freeland acknowledged meeting with investigators, he denied remembering any specific statements he made during that interview. The prosecutor questioned Freeland in detail "about the time, place, person, and circumstances attending the former statement, including the specific inconsistency at issue," laying an "ample foundation" for the introduction of the inconsistent statement, Cade v. State, 289 Ga. 805, 810 (6) (716 SE2d 196) (2011), and satisfying the purpose of the foundation requirement. Duckworth, 268 Ga. at 567-568. The recorded interview was later admitted without objection and played for the jury. Hurt now contends that the State was required to show Freeland a previously prepared transcript of the recorded interview as a predicate to admitting the interview and that trial

10

counsel was ineffective in neglecting to object when the State failed to comply with this requirement.

This Court has previously held that, "[a]lthough [former] OCGA § 24-9-83 provides that written contradictory statements that are in existence shall be shown or read to the witness, there is no similar language requiring videotaped statements to be shown to the witness prior to their use for impeachment purposes." Byrum v. State, 282 Ga. 608, 610-611 (4) (652 SE2d 557) (2007). See also Cade, 289 Ga. at 805 (applying same principle to audio recordings). As we noted in Byrum, the plain language of former OCGA § 24-9-83 requires only that "*written* contradictory statements . . . be shown or read to the witness," 282 Ga. at 610, and the fact that the September 2009 video-recorded interview was transcribed does not transform the nature of Freeland's prior statement in that interview. Further, if former OCGA § 24-9-83 does not require a video-recorded statement to be played for a witness it follows that there is no requirement that the witness be shown a transcript of that recording; we see no meaningful distinction between providing the witness with a

transcript of the recording and playing the recording for the witness.[5]

Accordingly, the State laid a proper foundation for the admission of the

September 2009 interview, and trial counsel was not ineffective for failing to

make a meritless objection. See Wesley, 286 Ga. at 356.

(b) Also admitted without objection were Freeland's audio-recorded

telephone conversation with Woods and Freeland's July 2009 audio-recorded

interview with investigators. At the motion for new trial hearing, trial counsel

testified that he did not remember why he did not object and that he had no

strategic reason for not objecting. However,

> [a]s we recently explained, we are not limited in our assessment of
> the objective reasonableness of lawyer performance to the
> subjective reasons offered by trial counsel for his conduct. If a
> reasonable lawyer might have done what the actual lawyer did –
> whether for the same reasons given by the actual lawyer or different
> reasons entirely – the actual lawyer cannot be said to have
> performed in an objectively unreasonable way.

---

[5] In McDonald v. State, 249 Ga. App. 1, 3-4 (3) (548 SE2d 361) (2001), the
Court of Appeals concluded that the State was required to show a defendant a copy
of his transcribed statement or read the statement in his hearing before impeaching
the defendant with that statement. This conclusion, however, was reached after the
Court of Appeals had already reversed the defendant's conviction on other grounds
and without significant analysis; further, McDonald predates Byrum and Cade. To
the extent that this dicta from McDonald is inconsistent with this opinion, it is
disapproved.

12

Shaw v. State, 292 Ga. 871, 875, n.7 (3) (a) (742 SE2d 707) (2013).

The record shows that trial counsel's theory was that Freeland was the actual killer who was trying to blame Hurt for the murder, and these recordings lend support to that theory. In the recordings, Freeland relays exact and intimate details regarding the murder, including the time of the murder and how Hurt arrived at the drug house; acknowledges being involved in the drug trade and having served prison time; exclaims that, as a convicted felon, he might get the "electric chair" were he involved in the murder; suggests to police that they "catch" Hurt with the murder weapon and obtain a warrant for his residence; and calls Hurt "slime." While it is unclear whether the State laid a sufficient foundation for the admission of these recordings, and while these recordings certainly inculpate Hurt, the recordings also provide not-insubstantial support for the theory that all the details concerning the murder came exclusively from Freeland and that Freeland was the actual murderer; trial counsel certainly focused on these ideas during his opening statement and closing argument. Because these two recordings supported trial counsel's theory at trial, we cannot say that trial counsel performed in an objectively unreasonable way by failing to object to these recordings. See Shaw, 292 Ga. at 875, n.7. Moreover, in light

13

of the fact that the September 2009 recording was properly admitted, the recorded telephone conversation and the July 2009 interview are merely cumulative of the September 2009 interview because all three recordings speak to Hurt's single admission to Freeland; accordingly, even if trial counsel should have objected to the admission of these recordings, Hurt suffered no prejudice. See Wilson v. State, 297 Ga. 86, 88 (2) (772 SE2d 689) (2015) ("The failure of trial counsel to object to such cumulative evidence does not support a claim of ineffective assistance of counsel.").

(c) The jury also heard without objection a recorded encounter between Freeland and investigators outside of Freeland's residence in July 2009. In this recording, investigators attempt to question Freeland about the murder, and it is apparent that Freeland is reluctant to speak with them; Freeland agrees to be interviewed at a later time at the precinct. Again, though trial counsel could not articulate why he did not object to the admission of this recording, the transcript shows that trial counsel explicitly utilized this recording to point out that Freeland was hesitant to speak with the investigators because he was selling drugs from his residence and that he was hesitant to speak out in the open for fear that others would learn that he was blaming Hurt for the murder. Though

14

it is not clear that this recording was admissible, the recording again supported trial counsel's theory of the case, and trial counsel's failure to object here was not objectively unreasonable. Moreover, nothing in this recording inculpates Hurt, and it is clear that the recording had no bearing on the outcome of trial; accordingly, even if trial counsel should have objected, Hurt suffered no prejudice.

(d) Finally, Hurt asserts that trial counsel failed to object when Investigator Esquilin testified that Freeland said that Hurt also confessed to an individual named "Mario." As Hurt acknowledges, however, this fact was referenced during Freeland's September 2009 interview, which, as discussed above, was properly admitted and played for the jury. Moreover, in light of the other evidence admitted at trial, we cannot say this testimony in reasonable probability changed the outcome of Hurt's trial; accordingly, Hurt suffered no prejudice from trial counsel's failure to object to this testimony.

4. Hurt also contends that the trial court abused its discretion when it disallowed three of Hurt's proposed voir dire questions. Specifically, Hurt sought to ask prospective jurors if they would fault Hurt if he did not testify, if they believed that Hurt was required to prove his innocence, and if they would

15

believe an individual guilty of a crime simply because he or she was arrested. The trial court disallowed the proposed questions on the basis that they were "covered in the nature of the charges." Hurt now argues that he was prevented from identifying jurors who would have been biased against him.

According to the record, however, trial counsel did not object when the trial court announced that it would disallow the requested questions; accordingly, this issue is not preserved for appellate review. See Brockman v. State, 292 Ga. 707, 720 (8) (739 SE2d 332) (2013); State v. Graham, 246 Ga. 341, 342 (271 SE2d 627) (1980). Even if this issue were properly preserved, the claim is without merit. "The single purpose for voir dire is the ascertainment of the impartiality of jurors, [and] their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination." Whitlock v. State, 230 Ga. 700, 705 (4) (198 SE2d 865) (1973). "[T]he scope of voir dire and the propriety of particular questions are best left to the sound discretion of the trial court[.]" Hammond v. State, 273 Ga. 442, 446 (2) (c) (542 SE2d 498) (2001). Here, the substance of Hurt's questions was covered when the trial court asked the three statutory questions set forth in OCGA § 15-12-164. The trial court exercised sound discretion here.

16

5. While the evidence was sufficient to sustain Hurt's convictions and we find no merit to Hurt's enumerations of error, we do find error in Hurt's sentences. Hurt was found guilty of, inter alia, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, and possession of a firearm by a convicted felon. The trial court sentenced Hurt to life imprisonment for felony murder predicated on aggravated assault and purportedly merged the remaining counts listed above. However, the second count of felony murder – felony murder predicated on possession of a firearm by a convicted felon – did not merge but was vacated by operation of law. See Leeks v. State, 296 Ga. 515, 524 (7) (769 SE2d 296) (2015) (second felony murder count vacated by operation of law because felony murder convictions involved the same victim). Because that second count of felony murder stood vacated by operation of law, there was nothing into which the felon-in-possession count could have merged. See Malcolm v. State, 263 Ga. 369, 373 (5) (434 SE2d 479) (1993). Therefore, the trial court is required to vacate that portion of its sentencing order purporting to merge the felon-in-possession count and impose a proper sentence for that count.

Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.

17