In the Supreme Court of Georgia

Decided:    September 12, 2016

S16A0660. HOOKS v. WALLEY.

HINES, Presiding Justice.

Warden Brad Hooks appeals from the grant of Ray K. Walley's application for a writ of habeas corpus after the habeas court's ruling that Walley's appellate counsel rendered ineffective assistance in failing to pursue a claim of ineffective assistance by trial counsel. For the reasons that follow, we reverse the grant of the writ of habeas corpus.

According to the record placed before the habeas court, Walley was indicted by a Forsyth County grand jury of one count of aggravated sexual battery and one count of child molestation. His original counsel in the trial court was Billy Spruell, but during what was scheduled to be a plea hearing on March 23, 2006, the trial court declared that it would allow Spruell to withdraw from representing Walley after Spruell stated to the court that he did not believe that it was in Walley's best interest to plead guilty, and after Walley told the court

that Spruell had not conveyed to him any plea offer from the State that included a recommendation that Walley be sentenced to serve five years in prison; at the hearing, the State's articulated plea offer included a recommendation that he serve seven years in prison.[1]

Walley was tried before a jury with new counsel, Charles Haldi, and convicted on both counts set forth in the indictment; he subsequently received a sentence totaling twenty years, of which 15 were to be served in prison, with the remainder to be served on probation. After trial, Walley was represented by Brian Steel, who raised various issues in an amended motion for new trial, which motion was denied; one of those issues was that Spruell failed to convey the plea offer to Walley, a claim he withdrew during the hearing on the amended motion. In an appeal to the Court of Appeals, Steel raised issues regarding the admission of evidence of a prior similar transaction, improper closing argument,

---

[1] On December 28, 2005, the prosecutor sent a letter to Spruell memorializing the "five-year offer," under which the State's recommendation was to be that Walley receive a sentence of fifteen years, of which five were to be served in prison; Walley was to plead guilty to the charge of child molestation, the charge of aggravated sexual battery was to be dismissed, and certain conditions on Walley's conduct would be imposed. At the time the five-year offer was made, the court had not yet ruled on whether evidence of any similar transactions of Walley would be admitted, and it appears that the offer was revoked after the trial court ruled that evidence of at least one similar transaction would be admitted. During the March 23, 2006 hearing, Spruell told the court that he and Walley discussed the five-year offer, although when the State told him of the offer, "I didn't run immediately to the jail and tell [Walley], but we did discuss it."

and ineffective assistance of counsel on Haldi's part related to jury instructions and closing argument. The Court of Appeals affirmed Walley's convictions. *Walley v. State*, 298 Ga. App. 483 (680 SE2d 550) (2009).

In 2013, Walley petitioned for a writ of habeas corpus, alleging ineffective assistance on Steel's part in that Steel abandoned a claim that Walley had been afforded ineffective assistance by Spruell, which claim was based on Walley's assertion that Spruell did not communicate to Walley any plea offer of the State that, if accepted, would have resulted in Walley's serving a five-year prison term. At the habeas corpus hearing, Spruell testified that he had presented the plea offer to Walley, but that he did not recall giving the State's plea offer letter to Walley; Spruell also testified that Walley did not want to admit to the indictment's allegations, desiring instead to enter an *Alford*[2] plea, but that when he approached the State on that basis, the State revoked the five-year offer.[3]

As this Court has previously said,

> [t]he United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (104 SC[t] 2052, 80 LE2d 674) (1984) established the

---

[2] *North Carolina v. Alford*, 400 U.S. 25, 33-38 (91 SCt 160, 27 LE2d 162) (1970).

[3] During the hearing on March 23, 2006, the prosecutor declared that the State would oppose any *Alford* plea; the trial court also expressed that it was unlikely to accept an *Alford* plea.

standard for ineffective assistance of counsel, and though the opinion is phrased in terms of ineffective assistance of trial counsel, it can be used as a basis for establishing a standard for ineffective assistance of appellate counsel. The *Strickland v. Washington* standard consists of a two-prong analysis: first, counsel's performance must have been deficient, and second, the deficiency must have prejudiced the defense. *Battles v. Chapman*, 269 Ga. 702 (1) (506 SE2d 838) (1998) (Citations omitted.).

*Arrington v. Collins*, 290 Ga. 603, 603-604 (724 SE2d 372) (2012) (Punctuation omitted.)

And, as to a complaint that appellate counsel failed to raise certain issues,

[i]t is the attorney's decision as to what issues should be raised on appeal, and that decision, like other strategic decisions of the attorney, is presumptively correct absent a showing to the contrary by the defendant. The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. Accordingly, it has been recognized that in attempting to demonstrate that appellate counsel's failure to raise a state [court] claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. Rather, in determining under the first *Strickland* prong whether an appellate counsel's performance was deficient for failing to raise a claim, the question is not whether an appellate attorney's decision not to raise the issue was correct or wise, but rather whether his decision was an unreasonable one which only an incompetent attorney would adopt. [Cits.]

4

Id. at 604. When this Court reviews a habeas court's decision on a question of ineffective assistance of appellate counsel, we accept the habeas court's factual findings unless they are clearly erroneous, but we apply the law to those facts de novo. *State v. Garland*, 298 Ga. 482, 484 (1) (781 SE2d 787) (2016).

It is certainly true that trial counsel's failure to convey a plea offer may form the basis of a claim that counsel's performance was deficient so as to satisfy the first prong of the *Strickland* standard, see *Missouri v. Frye*, __ U.S. ___ (132 SCt 1399, 182 LE2d 379) (2012), and that the failure to raise on appeal a valid claim of ineffective assistance of trial counsel based on the failure to convey a plea offer may constitute ineffective assistance of appellate counsel. See *Harris v. Upton*, 292 Ga. 491, 492-493 (1) (739 SE2d 300) (2013). However, while part of Walley's burden in the habeas court included showing that trial counsel failed to convey the plea offer, and was ineffective in doing so, those deficiencies alone do not demonstrate that *appellate* counsel was ineffective in failing to pursue a claim based upon trial counsel's performance. *Arrington*, supra. And, on the question of Steel's abandoning any claim of ineffective assistance on Spruell's part in failing to convey the plea offer, it was Walley's burden in the habeas court to overcome the presumption that Steel's

5

decision not to pursue such a ground was reasonable, and instead show that this "decision was an unreasonable one which only an incompetent attorney would adopt." Id. And this Walley simply failed to do.

In its order granting Walley's petition, the habeas court details in three pages its findings that Spruell rendered ineffective assistance of counsel in not properly conveying the plea offer to Walley, then simply states: "The evidence also shows ineffective assistance of appellate counsel Brian Steele [sic] for not pursuing this issue on appeal." While certain findings may be implicit in an order, see *Perkins v. Hall*, 288 Ga. 810, 828 (IV) (708 SE2d 335) (2011), the record must nonetheless support the habeas court making such findings. See *Clowers v. Spikes*, 272 Ga. 463 (532 SE2d 8) (2000). And, the evidence presented to the habeas court did not enable it to conclude that Steel rendered ineffective assistance.

In Walley's amended motion for new trial, Steel set forth as one ground for a new trial that Walley's "original counsel failed to provide to Defendant a negotiated plea offer." However, Steel did not present this issue to the Court of Appeals in Walley's direct appeal. See *Walley*, supra. As to the originally-claimed failure to communicate the plea offer, the trial court's order on the

amended motion for new trial specifically states that: "Defendant withdrew this ground of his motion at oral argument. Therefore, it need not be addressed further by this Court." And, no further information regarding Steel's decision to withdraw this ground was ever provided to the habeas court, and in particular, no transcript of the hearing on the amended motion for new trial was put into the habeas court record. Although Steel was called to testify during the habeas hearing, Walley's habeas counsel asked Steel no questions about his decision to abandon the claim that Spruell rendered ineffective assistance, or about Steel's failure to assert any such claim to the Court of Appeals, despite the fact that this was the only ground raised in Walley's original application for a writ of habeas corpus. Rather, Steel was asked about other issues that he did not raise before the Court of Appeals, regarding which he testified that he had

> no memory if I raised them at the trial court and then decided to abandon them at the Court of Appeals. I have no memory if there are issues I missed, if there were issues I saw and whatever reason, good strategy or bad strategy, I abandoned them. I just don't [. . .] I just don't know. But if they're good issues, clearly, I wanted to win the appeal.

Steel further testified:

> I do want Mr. Walley to win his habeas. I want him to win his appeal. So, if it's an issue and I didn't raise it, then I should have

7

raised it. And – and if I should have raised it, then clearly, I want the court to grant the habeas, I mean [. . .] that's why we're all here.

On cross-examination during the habeas hearing, Steel testified that he raised every claim that he "saw that might have a chance." Although he was not specifically asked about any issue regarding whether arraignment counsel communicated the plea offer to Walley, Steel testified:

> You know, you put up Billy Spruell and Charles Haldi and Mr. Walley – and I think those are the witnesses, but – and then you have to – get some new information, so. And I don't remember if Billy Spruell says one thing or if Mr. Walley says something else, and it just destroys the issue. So I wouldn't raise the issue. I wouldn't want to waste the – any court's time where a case comes out that's, again, bad, or the issue wasn't, you know, strong when you look at how the case came out.

And the record placed before the habeas court shows that the situation faced by Steel was indeed one in which "Billy Spruell says one thing [and] Mr. Walley says something else." During the hearing of March 23, 2006, Spruell informed the trial court that:

> At the time that five year recommendation was conveyed to me, the motion [to admit evidence of Walley's similar transactions] that the State had was pending. Mr. Walley and I talked about it and discussed whether or not the court was going to let in the [similar transactions.] . . . and there was never any indication until after [the court ruled that a similar transaction could be introduced], then the State withdrew their five year recommendation. . . . I don't think

8

[Walley] had an opportunity to plead to it under the five year option.

Spruell responded affirmatively when the trial court asked him during that hearing if he advised Walley "to wait [to decide on the plea offer] until after the [similar transactions issues] were decided."[4]

Spruell testified during the habeas hearing: "I do recall specifically discussing the five-year plea with [Walley], but I don't remember showing him [the] letter [memorializing the offer]."[5] He further testified that Walley was "dissatisfied with the five-year plea offer," that Walley "turned down the offer of the five years," but that Walley later "indicated to me that he would take the five years, but he wanted to do an *Alford* plea," and that when Spruell next contacted the prosecutor, she informed him "that the five-year [plea offer] was no longer available [and she] wanted seven years on a plea . . .."

---

[4] During this hearing, Spruell also informed the court that he believed that Walley wanted to plead guilty to enable him to begin to get medical care for heart and leg conditions, but that Spruell did not believe that pleading guilty would be in Walley's best interest; he also informed the court that Walley was "not willing to admit any responsibility for this act," and that he had discussed with Walley a guilty plea under *Alford*, supra. The State declared that it would object to an *Alford* plea, and the court stated it was not inclined to accept an *Alford* plea.

[5] During the habeas hearing, Haldi testified that he received Spruell's case file, but did not recall seeing in it a letter offering the five-year plea; Walley testified that he was not shown the December 28, 2005 five-year plea offer letter, and the first he learned of the offer was at the March 23, 2006 hearing.

9

Although the evidence placed before the habeas court may have authorized that court's conclusion that Spruell rendered ineffective assistance of counsel, we need not decide that question; simply put, there was no evidence presented to the habeas court sufficient to overcome the presumption that Steel made an appropriate strategic decision in withdrawing the claim that Spruell had rendered ineffective assistance of counsel, and without Walley having met his burden to produce such evidence, the habeas court was not authorized to grant the writ. *Harris*, supra; *Arrington*, supra; *Clowers*, supra. Accordingly, the judgment of the habeas court must be reversed.

Judgment reversed. All the Justices concur.