

## SUPREME COURT OF GEORGIA

Atlanta  November 2, 2017

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

It appearing that the enclosed opinion decides a second-term appeal, which must be concluded by the end of the August Term on November 18, 2017, it is ordered that a motion for reconsideration, if any, including any motions submitted via the Court's electronic filing system, must be **received** in the Clerk's Office by **10:00 a.m. on Thursday, November 9, 2017.**

SUPREME COURT OF THE STATE OF GEORGIA

Clerk 's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_Therese S. Barnes_, Clerk

In the Supreme Court of Georgia

Decided: November 2, 2017

S17A0989. ANTHONY v. THE STATE.

GRANT, Justice.

Appellant Jelani Asim Anthony was convicted of malice murder and possession of a firearm during the commission of a crime.[1]   On appeal, Anthony contends that the trial court erred by (1) refusing to suppress an identification obtained as the result of an allegedly flawed lineup and (2) failing to grant his motion for new trial after new evidence relating to an

---

[1] On December 2, 2011, a Cobb County grand jury indicted Anthony and his codefendant Eric Scales for malice murder, felony murder, aggravated assault, and three counts of possession of a firearm during the commission of a crime in connection with the shooting death of Warren Broadnax.   After a joint trial, a jury found Anthony guilty on all counts.   Anthony was sentenced to life for malice murder and a consecutive five-year sentence for one of the possession counts. The trial court purported to merge the remaining counts for sentencing purposes. Though the trial court's nomenclature is wrong, see *Malcolm v. State*, 263 Ga. 369, 371-372 (434 SE2d 479) (1993), neither party urges this Court to correct any errors with regard to Anthony's sentence and the result is proper.   Anthony filed a timely motion for new trial, which was subsequently amended through new counsel.   After a hearing, the trial court denied Anthony's motion for new trial. Anthony filed a timely notice of appeal, which was amended by new appellate counsel, and his appeal was docketed to this Court in the April 2017 term and submitted for a decision on the briefs.

alternate suspect was revealed. Anthony further contends that his trial counsel and post-trial counsel were ineffective in a number of ways. Finding no error, we affirm.

## I.

In the light most favorable to the verdicts, the evidence presented at trial shows the following. Late one night, Eric Scales drove a burgundy Toyota Highlander into the Wyndcliff Apartment complex with appellant Jelani Anthony in the passenger seat. Anthony got out of the SUV, walked over toward the curb and shot Warren Broadnax eight times with a .40 caliber Sig Sauer semi-automatic pistol. Anthony then got back into Scales's car and the two drove away. Broadnax died from the gunshot wounds.

Roommates Redd Coker and Brandon Love were living in an apartment at Wyndcliff with a sliding door that faced a parking lot. On the night Broadnax was murdered, Coker had just returned from work when he saw headlights flash across his sliding door. Thinking that the headlights might belong to his girlfriend's car, Coker looked out the sliding glass door of his balcony and watched as a man got out of a dark colored SUV. Coker and Love then heard ten to fifteen gunshots. From the same sliding glass door,

Coker watched as a person walked back to the SUV while putting a gun in his waistband. When the SUV door opened, the interior lights came on and illuminated the person's face. As a result, Coker got a good look at the shooter before the SUV drove away. Coker would later identify the shooter as Anthony.

After the SUV left, Coker and Love went outside and found Broadnax. Coker called 911, but left the scene before officers arrived because he had an outstanding arrest warrant for violating his probation. Police arrived and found Broadnax, who was bleeding heavily from multiple gunshot wounds. Detective Ron Waddell recovered the victim's phone and called the numbers listed in the recent call log. Detective Waddell spoke to people associated with every number except for one— a number listed simply as V-A. In an attempt to identify the person listed as V-A, Detective Waddell spoke to a woman who was a resident at Wyndcliff and who had previously allowed Broadnax to find shelter in her apartment when he was in the complex parking lot without another place to go. The resident reported that a young man driving a burgundy Toyota Highlander attempted to pick her up in the parking lot on the night of Broadnax's murder. The young man gave her a

3

phone number, which she kept. That phone number matched the number listed as V-A in Broadnax's phone. After speaking to another resident, Detective Waddell determined that the man who spoke to the resident was Eric Scales. In the meantime, Atlanta police located a burgundy Toyota Highlander that had been reported stolen. Inside the SUV, they found personal property belonging to Broadnax and a security guard uniform with the name E. Scales.

Detective Waddell obtained a court order for the subscriber information, call details, and cell tower information for Scales's cell phone number. Detective Waddell learned that Scales had made multiple calls to Broadnax; the two men appeared to speak almost daily. More importantly, cell tower information showed that Scales's cell phone was near the murder scene the night Broadnax died. Scales had not called Broadnax since the murder.

Through a series of leads, Detective Waddell obtained a second court order for information relating to another phone number, which turned out to be Anthony's. The cell phone records showed that Scales's phone had stopped near Anthony's residence the night of the murder. Then both

Scales's cell phone and Anthony's cell phone travelled to the Wyndcliff apartments at about the time Broadnax was killed. Anthony's cell phone was turned off while he was at the apartment complex, but it was turned back on a few days later.

Coker agreed to come to the police station and try to identify the man he saw in the parking lot on the night Broadnax was murdered. Detective Waddell assured Coker that if he came to the station he would not be arrested on his outstanding probation warrant at that time. Coker agreed, and a detective who was not involved in the investigation, Detective Turner, conducted the photo lineup with Coker. Detective Turner and Coker went through two sequential lineups.[2] The first sequential lineup included a photograph of Scales. Coker did not make any identification when shown that lineup. Coker was then shown a second sequential lineup that contained a picture of Anthony. Coker identified Anthony as the man from the parking lot.

Police then arrested Anthony, who provided a statement after he was

---

[2] In a sequential lineup, the witness is shown each photograph individually instead of being shown six photographs at the same time. The alternative procedure, in

5

advised of his *Miranda* rights. In his statement, Anthony admitted that he owned a Sig Sauer .40 caliber semi-automatic pistol. He admitted that he was friends with Scales, and that he knew Broadnax. Anthony confessed to being with Scales the night Broadnax was murdered, but insisted that he had gone to a different apartment complex than the one where the murder took place. When confronted with the evidence that his cell phone was at Wyndcliff, Anthony hedged that he knew Scales was driving the burgundy Toyota Highlander, but still denied being in the car at the time of the crime. When informed that a witness had identified him as being in the Wyndcliff parking lot at the time of the crime, Anthony said "maybe" he had been there, but maintained that he was nothing more than a passenger in Scales's SUV.

Scales, for his part, testified that he shot Broadnax in self-defense. In Scales's version of events, Broadnax and another man, identified only as Little C, were in his SUV at the Wyndcliff Apartments. Broadnax found a gun inside the SUV and pointed it at Scales. Scales then wrestled the gun away from Broadnax and shot him with it.

At trial, a jury found Anthony guilty of malice murder among other

which six photos are shown at the same time, is referred to as a six pack.

crimes, and Anthony filed a motion for new trial, which he later amended. The trial court denied his motion. We note that three different attorneys have represented Anthony. First, trial counsel—who conducted the trial and filed the first motion for new trial. Next, post-trial counsel—who amended the motion for new trial, conducted the motion for new trial hearing, and then filed the first notice of appeal. Finally, appellate counsel—who filed an amended notice of appeal and the briefs before this Court and currently represents Anthony.

Although Anthony does not challenge the sufficiency of the evidence, we find that the evidence was sufficient for a rational trier of fact to find Anthony guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

## II.

Anthony's first contention is that the trial court erred by refusing to suppress evidence of Coker's identification of Anthony as the shooter

because the photographic lineup was flawed.[3]   We disagree.

At trial, Detective Turner testified that he conducted two sequential lineups with Coker.  Anthony objected and asked to approach the bench.  During a bench conference conducted outside the presence of the jury, Anthony contended that in discovery the State had provided him with a single six-pack style lineup and not with any individual pictures from sequential lineups.  When the State tendered the sequential lineups into evidence, Anthony again objected that the State did not provide those lineups to him during discovery.  After a brief recess to permit Anthony to look at the pictures, the trial court admitted the evidence as State's exhibits 7 and 8 over the objection.

The objection that Anthony now raises is different from the one he raised in his motion to suppress or at trial.  Anthony's sole objection at trial was based on his belief that he had not been provided with the sequential lineup pictures during discovery.  Anthony's counsel subsequently informed

---

[3]Prior to his trial, Anthony filed a motion to suppress photographic identifications and argued that the identification procedures were "so unreliable as to give rise to a substantial likelihood of misidentification."  The record does not contain any pretrial ruling on that motion; nor does it appear that Anthony renewed his motion

the trial court that the State had provided a copy of the sequential lineup pictures. He made no further objections to the lineup identification evidence. In order to preserve an objection for appellate review, the specific ground of the objection must be made at the time the challenged evidence is offered. *Hurt v. State*, 298 Ga. 51, 53-54 (779 SE2d 313) (2015). An issue that is not presented or ruled on by the trial court is not preserved for appellate review.[4] *McClendon v. State*, 299 Ga. 611, 616 (791 SE2d 69) (2016). We conclude that Anthony's objection at trial did not specifically raise the issue of whether the photo lineup procedures were flawed and resulted in an unreliable identification by Coker whether in-court or out-of-court. Similarly, the issue was not raised or ruled upon by the order denying Anthony's motion for new trial. The issue therefore is not preserved for our review.

## III.

during trial.

[4] Anthony's trial occurred before January 1, 2013 and was controlled by a prior version of our Evidence Code. Under our new Evidence Code, we can conduct a plain error review of certain unpreserved evidentiary errors affecting substantial

Anthony's next contention is that the trial court erred in failing to grant his motion for new trial. Anthony claims that he introduced new evidence of an undisclosed police suspect, Anthony Carmon, who was the subject of a "Be On the Lookout" ("BOLO") bulletin created by Detective Waddell. Anthony mounts a two-pronged attack based on the BOLO. First, he asserts that the BOLO bulletin for Carmon fits the statutory parameters for a new trial based on newly discovered evidence under OCGA § 5-5-23. [5] Second, he asserts that the BOLO demonstrates that police had another suspect or potential witness to the crime and the State's failure to disclose that evidence constitutes a clear *Brady* violation. Both of these claims fail.

A. The standard for granting a new trial based on newly discovered evidence is well established. A party who asks for a new trial based on newly discovered evidence must satisfy the court:

---

rights. See OCGA § 24-1-103 (d). But we cannot do so here.

[5] Under OCGA § 5-5-23:

> A new trial may be granted in any case where any material evidence, not merely cumulative or impeaching in its character but relating to new and material facts, is discovered by the applicant after the rendition of a verdict against him and is brought to the notice of the court within the time allowed by law for entertaining a motion for a new trial.

10

(1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

*Wimberly v. State*, 2017 WL 4582746, at *4 (___ SE2d ___) (Ga. Oct. 16, 2017) (quoting *Timberlake v. State*, 246 Ga. 488, 491 (271 SE2d 792) (1980)) (citation omitted). Here, Anthony has not demonstrated that the Carmon BOLO was not known to him at or prior to his trial. He has also failed to establish that the BOLO is so material that it would probably have produced a different verdict—it is not.

At trial, Anthony testified for the first time that a man named "Little C" was in Scales's SUV the night of the murder—neither he nor Scales had ever mentioned Little C to police before—and that he himself exited the SUV after Scales and Little C started smoking marijuana inside. Scales's testimony was somewhat different; he contended that Little C was already at the Wyndcliff apartments on the night of the murders. Scales testified that he had a gun in his SUV and that Broadnax had picked up that gun.

11

According to Scales, he then took the gun away from Broadnax and shot Broadnax as Broadnax was reaching for his waistband. Neither Anthony nor Scales ever testified that Little C was the actual shooter.

On appeal, Anthony contends that the BOLO for Carmon is relevant because Carmon is Little C, and the BOLO demonstrates that police must have suspected that Little C was the shooter or was involved in the murder. Because the Carmon BOLO was not introduced at trial, Anthony now presumes that trial counsel did not know about it. But there is no indication, other than Anthony's own speculation, that the BOLO was not provided to Anthony's trial counsel during discovery. It was Bates stamped, and he has provided no explanation of where it might have come from other than the original case file. The mere fact that trial counsel did not use it during trial does not establish that it was not available.

And in any event, the BOLO is not so material that it would have produced a different outcome at trial. As an initial matter, until now, Anthony has never suggested that Little C was Carmon. But even assuming that Little C and Carmon are the same person, neither Anthony nor Scales claimed that Little C was the shooter. None of the other witnesses testified

to seeing a third person in the SUV on the night of the murder. Thus—even if the jury believed Scales and Anthony that a third person was present *and* that Little C was Carmon—the jury never heard any testimony that Little C was the shooter. Consequently, there is no likelihood that the jury would have produced a different verdict had it known of the Carmon BOLO. We therefore conclude that Anthony is not entitled to a new trial based on newly discovered evidence.

B. Anthony maintains that the State's failure to produce the BOLO prior to his trial also constituted a *Brady* violation.[6]

We first note that Anthony did not raise this issue at trial or as a part of his motion for new trial. Because he has raised his *Brady* claim for the first time on appeal, Anthony has waived the right to raise this objection on appeal. *Pierce v. State*, 286 Ga. 194, 196 (686 SE2d 656) (2009) (failure to raise available *Brady* claim at trial or in motion for new trial waives right to raise this objection on appeal). Nevertheless, we note that even if Anthony

---

[6] A *Brady* violation refers to "the suppression by the prosecution of evidence favorable to an accused upon request" and such suppression "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U. S. 83, 87

had not waived this contention, his claim would still fail because the analysis related to his "new evidence" claim shows that he cannot meet any of the four *Brady* factors.

> Four factors must be present to establish a *Brady* violation:
>
> (1) the State, including any part of the prosecution team, possessed evidence favorable to the defendant; (2) the defendant did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed to the defense.

*State v. James*, 292 Ga. 440, 441 (738 SE2d 601) (2013).

As previously mentioned, there is no evidence that Anthony's trial counsel did not possess the BOLO prior to trial. The fact that trial counsel did not refer to Carmon at trial does not establish that the State failed to disclose the BOLO, or that the State actively suppressed it. Nor is there any probability that the outcome of the trial would have been any different with the BOLO. Anthony's *Brady* claim fails.

IV.

Anthony contends that his trial counsel was ineffective in a myriad of

---

(83 SCt 1194, 10 LE2d 215) (1963).

ways. Specifically, Anthony contends that his trial counsel failed to effectively investigate the lineup method and failed to cross-examine Detectives Turner and Waddell effectively about inconsistencies in the lineup method. He contends that trial counsel failed to investigate Carmon as a potential witness involved in the incident; failed to effectively cross-examine Detective Waddell and permitted him to speculate about Anthony's motive; abandoned a pretrial *Jackson-Denno* [7] motion; failed to call character witnesses; and failed to object and move to strike the State's closing-argument references to Little C. Anthony's post-trial counsel raised two claims of ineffective assistance below: trial counsel's failure to investigate Carmon and trial counsel's failure to effectively cross-examine Detective Waddell. Anthony's remaining claims of ineffective assistance of trial counsel are procedurally barred because they were not raised "at the earliest practicable moment." *Williams v. Moody*, 287 Ga. 656, 666 (697 SE2d 199) (2010); see also *Wilson v. State*, 286 Ga. 141, 144 (686 SE2d 104) (2009) ("A defendant cannot resuscitate claims of ineffective assistance that are procedurally barred simply by bootstrapping them to a claim of

---

[7] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

ineffective assistance of appellate counsel.") (citation and quotation omitted). We turn now to Anthony's preserved claims.

We have recognized that our evaluation of ineffective assistance claims is controlled by the standard established by the Supreme Court of the United States in *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). "The *Strickland v. Washington* standard consists of a two-prong analysis: first, counsel's performance must have been deficient, and second, the deficiency must have prejudiced the defense." *Hooks v. Walley*, 299 Ga. 589, 590-591 (791 SE2d 88) (2016) (quotation omitted). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

Anthony contends that trial counsel rendered ineffective assistance by failing to investigate Carmon as a potential witness involved in the incident. A failure to adequately investigate a case may indeed constitute ineffectiveness. See, e.g., *Zant v. Hamilton*, 251 Ga. 553 (307 SE2d 667) (1983) (trial counsel was ineffective for failing to call alibi witnesses who could have testified that defendant was at work—approximately

three-and-a-half hours distant from the crime scene—only an hour after the robbery occurred).

Here, Anthony bases his ineffective assistance claim on trial counsel's failure to investigate Carmon. But at trial Anthony failed to claim that Carmon and Little C were the same person. Nonetheless, trial counsel attempted to cast doubt on Anthony's involvement in the crime and on the completeness of the police investigation by questioning witnesses about Little C. And Anthony did not show that Carmon, who did not testify at the motion for a new trial, would have been a relevant witness. Instead, the evidence presented at the motion for new trial hearing indicated that Carmon was not a suspect in the crime. The evidence thus supports the trial court's conclusion that Anthony did not meet his burden to show ineffective assistance of counsel in this regard. See *Lupoe v. State*, 284 Ga. 576, 579 (669 SE2d 133) (2008) (appellant did not demonstrate ineffective assistance based on trial counsel's failure to call an alibi witness where no testimony substantiated the claim that the witness's testimony would have been favorable).

Anthony also contends that trial counsel was ineffective when he failed

to conduct effective cross-examination of Detective Waddell. Anthony appears to believe that trial counsel permitted Detective Waddell to speculate about Anthony's perceived motive to murder a man whom he had never met. At trial, Detective Waddell's testimony indicated that as far as he could tell, Anthony was taking care of some business for Scales. Trial counsel followed up with several questions emphasizing the lack of prior connection between the victim and Anthony.

Trial counsel's tactical decisions about cross-examination will not constitute ineffective assistance unless they are so patently unreasonable that no competent attorney would have chosen that approach. *Romer v. State*, 293 Ga. 339, 344-345 (745 SE2d 637) (2013). We cannot say that trial counsel's decision here was patently unreasonable. In fact, trial counsel's inquiries about motive may have emphasized that there was no evidence of any prior connection between Anthony and the victim. Anthony has again failed to show deficiency.

V.

In addition to his arguments regarding trial counsel, Anthony contends that his post-trial counsel was ineffective in a variety of ways, including the

failure to subpoena trial counsel, failure to develop a record surrounding the Carmon BOLO, and, in general, because of her subsequent disbarment.

To preserve the issue of ineffective assistance of post-trial counsel, Thompson's appellate counsel had to "raise the issue at the earliest practicable opportunity of post-conviction review or the issue is waived." *Ruiz v. State*, 286 Ga. 146, 148 (686 SE2d 253) (2009). Thompson has met that standard because his current appellate counsel did not represent him prior to this appeal. Generally, when a preserved ineffective assistance of counsel claim is raised for the first time on appeal, we must remand for an evidentiary hearing on the issue. Id. But "[r]emand is not mandated if we can determine from the record that the defendant cannot establish ineffective assistance of counsel under the two-prong test set forth in *Strickland*." Id. (citation omitted); see also *Tepanca v. State*, 297 Ga. 47, 51 (771 SE2d 879) (2015). We conclude that an evidentiary hearing is not necessary in this case because we have already concluded that each of Anthony's preserved claims of trial error or ineffective assistance of trial counsel lack merit. Accordingly, the failure of post-trial counsel to subpoena trial counsel does not demonstrate prejudice as required under *Strickland*.

Lastly, the fact that post-trial counsel was subsequently disbarred[8] does not itself show ineffective assistance in Anthony's particular case. *Cross v. State*, 271 Ga. 427, 431 (520 SE2d 457) (1999). Disbarment alone is not sufficient to change the standard for ineffective assistance, and Anthony has not shown that post-trial counsel's disciplinary matters were related to this case or that post-trial counsel performed deficiently.

In sum, we affirm Anthony's convictions and find that Anthony has failed to meet his burden to show that his trial or post-trial counsel rendered ineffective assistance.

Judgment affirmed. All the Justices concur.

---

[8] Jennifer L. Wright, Anthony's post-trial counsel, was disbarred by order of this Court on May 23, 2016, well after Anthony's 2012 trial, for issues unrelated to her representation of him. *In the Matter of Wright*, 299 Ga. 139 (786 SE2d 686) (2016).