In the Supreme Court of Georgia

Decided: March 21, 2016

S15A1308. FRANKLIN v. THE STATE.

HUNSTEIN, Justice.

Appellant Courtney Franklin was convicted of murder and related offenses in connection with the April 2007 shooting death of Christopher Crawford. Franklin now appeals, contending that his trial counsel rendered ineffective assistance and that the trial court erred in admitting certain evidence and in refusing the jury's request for written instructions. Finding no error, we affirm.[1]

---

[1] Together with co-defendants Marquice Burks and Johnny McClendon, Franklin was originally charged in an eight-count indictment handed down by a Fulton County grand jury in January 2008. In March 2010, the trio were re-indicted, with Franklin being charged with three additional counts of criminal solicitation and one additional count of conspiracy, all in connection with events alleged to have occurred subsequent to the murder. Of the ten counts in which Franklin was named, four were ultimately dead-docketed, leaving the following six counts remaining for trial: malice murder; felony murder predicated on aggravated assault; aggravated assault; and three counts of criminal solicitation. At the conclusion of a jury trial held in April 2010, Franklin was found guilty of all counts with the exception of one of the three criminal solicitation counts. The trial court sentenced Franklin to life imprisonment for malice murder and two consecutive five-year terms for criminal solicitation, which were suspended; the remaining counts merged or were vacated by operation of law. Franklin filed a timely motion for new trial on May 3, 2010, which he amended on May 1, 2013. Following a hearing in December 2013, the trial court

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. Victim Crawford was shot and killed on the evening of April 13, 2007, in a West Atlanta neighborhood. At the time, Franklin, a local pimp, was on unfriendly terms with Crawford, whose "baby mother," Natasha Hurst, had begun working as a prostitute for Franklin. Franklin and Crawford often exchanged taunts and threats when they encountered each other on the street.

On the day of the shooting, Crawford and others were gathered in and around the neighborhood KFC, and Franklin was driving around the area. At one point, Crawford challenged Franklin to get out of his car and fight, to which Franklin replied that he would kill Crawford "with this .45." Later in the day, Crawford noticed Natalie Crews, a prostitute associated with Franklin, alone outside the KFC and announced he was going to "rob that ho." Crawford exited the restaurant, approached Natalie, and robbed her of the $5 she had on her person.

denied the motion in an order entered on February 28, 2014. Franklin filed a notice of appeal on March 3, 2014. The appeal was docketed to the September 2015 term of this Court and was thereafter submitted for decision on the briefs.

Natalie found Franklin at a nearby gas station and informed him of the robbery. Franklin made a series of phone calls, during which Franklin discussed getting a gun and killing Crawford. Natalie testified that she and Franklin, who was driving her blue Chevy Cobalt, left the gas station and met up with a man known as "Queesy," with whom Natalie's sister Teresa – also a prostitute working for Franklin – had had a sexual relationship. Queesy, who was accompanied by another man unfamiliar to Natalie, arrived in a red Chevy Cobalt belonging to Teresa. After the meeting, Natalie testified, she and Franklin drove back to the area around the KFC, with Franklin talking on his cell phone, attempting to locate Crawford.

Witnesses Jarvis Green and Shaketa Edwards Ba, who were at the KFC that day, testified that Franklin called them after the robbery to warn them to leave the KFC because he planned to come "show everybody I ain't playing." Hurst, who was also present, testified that Franklin stated that Crawford would "feel this .45" "since he went and robbed one of my hos." These witnesses urged Crawford to leave the area, but he refused.

Some time later, Crawford departed the nearby home of a friend and was walking down the sidewalk with Hurst. Hurst testified that they were

3

approached from the opposite direction by a male with his face partially covered by some article of clothing, who walked past them, then turned and shot at Crawford from behind.  Green and Ba, who were standing together nearby, both testified that they saw a man with his face partially covered exit a red car, walk past Crawford and Hurst, turn and fire at Crawford, and return to the red car to flee.  Crawford died at the scene from a gunshot wound to the back, which traversed his heart.

Teresa Crews testified that on the night of the shooting, after prostituting on Cleveland Avenue, she was picked up by Franklin and Natalie.  When she and her sister parted from Franklin, Teresa testified, Franklin instructed them to "lay low."  When the sisters subsequently went to retrieve Teresa's car from Queesy, he told them about the shooting and remarked that, had he known that the robbery he was avenging involved a mere five dollars, he would never have agreed to it.  Both Crews sisters identified Burks as the person they knew as "Queesy."

Several months after the shooting, Green contacted Atlanta Police Department homicide detective A.C. Smith with information regarding the case.  Green, who at the time was in jail on unrelated drug charges, told Detective

4

Smith that he had been approached by another jail inmate, who admitted that he, along with Burks and at Franklin's behest, had shot Crawford in retaliation for the robbery of Franklin's prostitute. Thereafter, Green identified co-defendant McClendon from a photographic lineup as the person who had made this jailhouse statement. Witness Ba also identified McClendon from a photo lineup as having been the shooter, noting that she recognized him by his distinctive eyes.

The State also adduced evidence of communications between cell phones respectively registered to Franklin and Burks' girlfriend spanning the day of the shooting, ending just minutes after the shooting was reported to police; these communications were transmitted from the cell tower covering the vicinity of the crime scene. Franklin's cell phone was disconnected the day after the shooting.

In addition, the State presented evidence that both Franklin and McClendon had made threats to Green after learning he was cooperating with investigators. The State also offered recordings of phone calls made by Franklin from jail in which he issued directives to kill Natalie and Green because they had given statements to police inculpating him in Crawford's murder.

5

1. Though Franklin has not enumerated the general grounds, we have concluded that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Franklin was guilty of all the crimes of which he was convicted. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Franklin contends that trial counsel rendered ineffective assistance in failing to object on confrontation grounds to the admission of Green's testimony regarding the jailhouse statement of co-defendant McClendon, who did not testify at trial. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 685, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the

6

Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

The evaluation of defense counsel's performance in connection with the admission of Green's testimony regarding McClendon's statement turns on whether this testimony was properly admitted; if it was, then counsel cannot be held to have performed deficiently in failing to make a meritless objection. See Wesley, 286 Ga. at 356. McClendon's statement was admitted under the hearsay exception for statements of co-conspirators, codified as of the time of trial at OCGA § 24-3-5 (2010) ("the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all").[2] "The co-conspirator hearsay exception permits admission of the hearsay statement of a co-conspirator, made in the course of the conspiracy, so long as a prima facie case of conspiracy has been established apart from the hearsay statement itself." Crawford v. State, 294 Ga. 898, 902 (2) (757 SE2d 102) (2014). Such independent prima facie evidence of a conspiracy need not be adduced prior to the admission of the hearsay statement at trial, so long as

---

[2]Under the new Georgia Evidence Code, the co-conspirator hearsay exception is now codified at OCGA § 24-8-801 (d) (2) (E).

sufficient evidence thereof is presented prior to the close of evidence. Thorpe v. State, 285 Ga. 604 (5) (678 SE2d 913) (2009).

> In order for a conspiracy to exist, "there must be an agreement between two or more persons to commit a crime." [Cit.] Such agreement need not be express, nor does it require a "meeting of the minds" to the same degree necessary to form a contract; all that is required is a tacit mutual understanding between persons to pursue a common criminal objective. [Cit.]

Griffin v. State, 294 Ga. 325, 327 (751 SE2d 773) (2013). For purposes of the hearsay exception, a conspiracy is deemed to endure so long as the parties thereto attempt to conceal either the crime itself or the identity of the perpetrators. Arevalo v. State, 275 Ga. 392 (5) (567 SE2d 303) (2002).

Here, then, in order for McClendon's statement to Green to qualify under the co-conspirator statement hearsay exception, the State was required to present prima facie evidence, apart from the hearsay statement itself, that there was a conspiracy to murder Crawford and that McClendon was a party to it. The State clearly presented evidence of an agreement to kill Crawford, in the form, inter alia, of testimony regarding Franklin's threats to kill Crawford after learning of the robbery; Franklin's meeting with "Queesy," who was ultimately identified as Burks; Franklin's post-meeting phone calls reflecting efforts to locate

8

Crawford; and Burks' admission to the Crews sisters that he had participated in Crawford's shooting and that the shooting was motivated by the robbery of Natalie. In addition to the evidence of a plan to kill Crawford was evidence of McClendon's role as the triggerman in this plan: eyewitness Ba positively identified McClendon as the man whom she had seen commit the shooting, and eyewitness Green, who corroborated details of Ba's account, also testified that the shooter had emerged from a car of the same color as that which Burks was driving at the time.

Accordingly, the State did present a prime facie case that McClendon was a party to the conspiracy to murder Crawford in retaliation for the robbery of Natalie Crews. McClendon made his jailhouse statement at a time when the investigation was ongoing and the other conspirators remained at large, and thus the statement was made during the pendency of the conspiracy. See Grimes v. State, 296 Ga. 337 (2) (a) (iii) (766 SE2d 72) (2014). Accordingly, the trial court properly held that the statement qualified under the hearsay exception for co-conspirator statements.

Franklin contends that, notwithstanding the applicability of this hearsay exception, trial counsel should have objected on the ground that the admission

9

of this statement violated his rights under the Sixth Amendment's Confrontation Clause. Specifically, Franklin argues that McClendon's statement did not bear sufficient "indicia of reliability" to overcome confrontation concerns, citing Dutton v. Evans, 400 U. S. 74 (II) (91 SCt 210, 27 LE2d 213) (1970) (identifying certain reliability factors necessary to the insulate a co-conspirator's out-of-court statement from a confrontation clause violation). However, as this Court has recognized, the Dutton paradigm is no longer applicable in light of Crawford v. Washington, 541 U. S. 36, 68-69 (124 SCt 1354, 158 LE2d 177) (2004), which held that the Confrontation Clause applies only to out-of-court statements that are testimonial in nature. Allen v. State, 288 Ga. 263 (4) (702 SE2d 869) (2010); see also Paul S. Milich, Ga. Rules of Evidence, § 18:11, p. 725-726 & n.13 (2015-2016 ed.) (noting that Dutton reliability factors are no longer applicable, post-Crawford). Accordingly, we need not assess McClendon's statement under the Dutton factors, and admission of the statement is subject to a Confrontation Clause challenge only if the statement is deemed testimonial.

"A statement is testimonial if its primary purpose was to establish evidence that could be used in a future prosecution." (Citation and punctuation

10

omitted.) Favors v. State, 296 Ga. 842, 845 (2) (770 SE2d 855) (2015). McClendon's statement, inculpating himself as well as Franklin and Burks, made to Green, a fellow jail inmate, was clearly not intended for use in a future prosecution, and it thus cannot be classified as testimonial. Therefore, Franklin's Confrontation Clause argument fails. See id. (inculpatory out-of-court statements by a non-testifying co-defendant to and in the presence of his girlfriend were not testimonial and thus not subject to scrutiny under the Confrontation Clause); Billings v. State, 293 Ga. 99 (4) (745 SE2d 583) (2013) (same). For this reason, Franklin cannot establish that his trial counsel performed deficiently in failing to object to the admission of this statement on this ground.

3. Franklin next contends that the trial court erred in allowing the State to publish the audio recording of Green's statement to Detective Smith in which he related McClendon's jailhouse confession, on the ground that the recording improperly bolstered Green's live testimony regarding McClendon's statement. Over objection, the trial court permitted the State to play the recording for the jury, finding that it was proper evidence of a prior consistent statement, offered in response to the defense's efforts to impeach Green on cross-examination.

11

Specifically, Franklin's defense counsel had questioned Green on cross-examination regarding his pending criminal charges, on which he faced a maximum 160-year total sentence, asking whether Green "would do anything . . . to get out of serving that much time."[3]

The prior consistent statement of a witness is admissible at trial "only where (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination." Woodard v. State, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998), overruled on other grounds by Bunn v. State, 291 Ga. 183 (728 SE2d 569) (2012).

> [A] witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross examination. . . . [T]o rebut a charge that a witness is motivated or has been influenced to testify falsely or that his testimony is a recent fabrication, evidence is admissible that he told the same story before the motive or influence came into existence or before the time of the alleged recent fabrication.

---

[3]These charges were different, and carried significantly greater sentences, from those on which Green was jailed at the time he contacted Detective Smith regarding McClendon's confession.

Id.[4]

The recording of Green's prior statement to Detective Smith satisfies all these criteria. Green was present at trial and was cross-examined, during which defense counsel endeavored to show that Green had a motive to fabricate – his pending, serious criminal charges – that arose subsequent to the time Green made his statement to Detective Smith. The recording was, thus, properly admitted as a prior consistent statement, and this enumeration must fail.

4. In his final enumeration of error, Franklin contends that the trial court erred in denying a request for written instructions made by the jury during its deliberations. The record reflects that, less than 20 minutes into deliberations, the jury sent a note to the trial court requesting a written copy of its instructions. Citing his customary practice of not sending out written instructions, the trial judge denied the request but informed the jury that he would readily accommodate any requests to be recharged on any portion of his instructions. Neither the prosecutor nor any of the three defense lawyers raised any objections to the court's handling of the jury's request.

---

[4]Under the new Georgia Evidence Code, the admissibility of prior consistent statements is governed by OCGA §§ 24-8-801 (d) (1) and 24-6-613 (c).

Assuming arguendo that Franklin's failure to object at the time does not entirely preclude our review on appeal,[5] we find no error in the court's denial of the jury's request. As Franklin concedes, there is no requirement under Georgia law, either statutory or otherwise, that the jury be given a written copy of the court's instructions for use in deliberations. Though trial courts clearly have the authority to do so, see Anderson v. State, 262 Ga. 26 (3), (4) (413 SE2d 732) (1992) (no error in sending written instructions out with jury), they are not required to do so. See Pruitt v. State, 270 Ga. 745 (14) (514 SE2d 639) (1999) (no error in declining to send written instructions out with jury).[6] There was thus no error in this regard.

Judgment affirmed. All the Justices concur.

---

[5]Compare Castillo v. State, 281 Ga. 579 (6) (642 SE2d 8) (2007) (failure to raise objection at trial constitutes waiver of issue on appeal), with State v. Kelly, 290 Ga. 29 (1) (718 SE2d 232) (2011) (failure to object to jury charge precludes all but "plain error" appellate review).

[6]The same is true in civil actions. See OCGA § 9-10-5 (b).

14