In the Supreme Court of Georgia

Decided: September 12, 2016

S16A0699. MCCLENDON v. THE STATE.
S16A0700. BURKS v. THE STATE.

HUNSTEIN, Justice.

Appellants Johnny McClendon and Marquice Burks were tried jointly and

convicted of malice murder and related offenses in connection with the April

2007 shooting death of Christopher Crawford.[1] Both men now appeal. Though

[1] On March 19, 2010, a Fulton County grand jury indicted co-defendants Johnny McClendon, Marquice Burks, and Courtney Franklin together as follows: malice murder (count 1), felony murder predicated on aggravated assault (count 2), felony murder predicated on possession of a firearm by a convicted felon (count 3), aggravated assault with a deadly weapon (count 4), possession of a firearm during the commission of a crime (count 5), and possession of a firearm by a convicted felon (count 6 - Burks, count 7 - Franklin, count 8 - McClendon). Franklin was also charged with three additional counts of criminal solicitation to commit murder of State's witnesses and one count of conspiracy escape. After a five day joint trial in April 2010, the three co-defendants were convicted of all charges. Both McClendon and Burks were sentenced to life for malice murder, plus consecutive suspended time for the two weapons charges, for a total sentence of life plus 10 years suspended. Although the trial court purportedly merged the two felony murder counts and the aggravated assault into Appellants' malice murder convictions, as discussed in Division 5 below, the "merger" of the felony murder convictions was error. Each appellant timely filed a motion for new trial, which were respectively amended, and, following a joint hearing on August 19, 2014, the trial court denied both motions. Each appellant timely filed a notice of appeal, both of which were docketed to the

we find no merit in any of the pre-trial and trial phase enumerations raised by Appellants, we agree with Burks that the trial court erred during sentencing when it failed to recognize that his felony murder verdicts were vacated by operation of law. Further, although not raised by McClendon, the trial court's purported merger of his felony murder verdicts was similarly erroneous. See Hulett v. State, 296 Ga. 49 (2) (766 SE2d 1) (2014) (merger error, even if not raised by the parties, may be addressed by appellate court sua sponte). Therefore, we must vacate those aspects of the sentences.

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. Victim Crawford was shot and killed on the evening of April 13, 2007, in a West Atlanta neighborhood. At the time, co-defendant Franklin, a local pimp, was on unfriendly terms with Crawford, whose "baby mother," Natasha Hurst, had begun working as a prostitute for Franklin. Franklin and Crawford often exchanged taunts and threats when they encountered each other on the street.

---

April 2016 term of this Court and were thereafter submitted for decision on the briefs. This Court has already affirmed Franklin's convictions and sentences. See Franklin v. State, 298 Ga. 636 (784 SE2d 359) (2016).

On the day of the shooting, Crawford and others were gathered in and around the neighborhood KFC, and Franklin was driving around the area. At one point, Crawford challenged Franklin to get out of his car and fight, to which Franklin replied that he would kill Crawford "with this .45." Later in the day, Crawford noticed Natalie Crews, a prostitute associated with Franklin, alone outside the KFC and announced he was going to "rob that ho." Crawford exited the restaurant, approached Crews, and robbed her of the $5 she had on her person.

Crews found Franklin at a nearby gas station and informed him of the robbery. Franklin made a series of phone calls, during which he discussed getting a gun and killing Crawford. Crews testified that she and Franklin, who was driving her blue Chevy Cobalt, left the gas station and met up with Marquice "Queesy" Burks with whom Crews' sister Teresa – also a prostitute working for Franklin – had had a sexual relationship. Burks, who was accompanied by another man unfamiliar to Crews, arrived in a red Chevy Cobalt belonging to Teresa. After the meeting, Crews testified, she and Franklin drove

3

back to the area around the KFC, with Franklin talking on his cell phone, attempting to locate Crawford.

Witnesses Jarvis Green and Shaketa Edwards Ba, who were at the KFC that day, testified that Franklin called them after the robbery to warn them to leave the KFC because he planned to come "show everybody I ain't playing." Hurst, who was also present, testified that Franklin stated that Crawford would "feel this .45" "since he went and robbed one of my hos." These witnesses urged Crawford to leave the area, but he refused.

Sometime later, Crawford departed the nearby home of a friend and was walking down the sidewalk with Hurst. Hurst testified that they were approached from the opposite direction by a male with his face partially covered by some article of clothing, who walked past them, then turned and shot at Crawford from behind. Green and Ba, who were standing together nearby, both testified that they saw a man with his face partially covered exit a red car, walk past Crawford and Hurst, turn and fire at Crawford, and return to the red car to flee. Crawford died at the scene from a gunshot wound to the back, which traversed his heart.

Teresa Crews testified that on the night of the shooting, after prostituting

4

on Cleveland Avenue, she was picked up by Franklin and her sister Natalie. When she and her sister parted from Franklin, Teresa testified, he instructed them to "lay low." When the sisters subsequently went to retrieve Teresa's car from Burks, he told them about the shooting and remarked that, had he known that the robbery he was avenging involved a mere five dollars, he would never have agreed to it. Both sisters identified Burks as the person they knew as "Queesy."

Several months after the shooting, Green contacted Atlanta Police Department homicide detective A.C. Smith with information regarding the case. Green, who at the time was in jail on unrelated drug charges, testified at trial that he had been approached by another jail inmate, who admitted that he, along with Burks, at Franklin's behest, had shot Crawford in retaliation for the robbery of Franklin's prostitute. Thereafter, Green identified Johnny McClendon from a photographic lineup as the person who had made this jailhouse statement. Witness Ba also identified McClendon from a photo lineup as having been the shooter, noting that she recognized him by his distinctive eyes.

The State also adduced evidence of communications between cell phones,

one registered to Franklin and the other to Burks' girlfriend, spanning the day of the shooting, ending just minutes after the shooting was reported to police; these communications were transmitted from the cell tower covering the vicinity of the crime scene. Franklin's cell phone was disconnected the day after the shooting.

In addition, the State presented evidence that both Franklin and McClendon had made threats to Green after learning he was cooperating with investigators. The State also offered recordings of phone calls made by Franklin from jail in which he issued directives to kill Natalie Crews and Green because they had given statements to police inculpating him in Crawford's murder.

1. Though not raised by either Appellant, we find that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that both McClendon and Burks were guilty of the crimes for which they were convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Case No. S16A0699*

2.    McClendon contends that his trial counsel rendered ineffective assistance for failing to move for a mistrial during closing argument after Burks'

6

attorney impermissibly commented on McClendon's right not to testify. We disagree.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If the defendant fails to satisfy either prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012). Although the trial court failed to make any specific factual findings regarding McClendon's ineffectiveness claim, "[r]emand is not mandated if we can determine from the record that the defendant cannot establish ineffective assistance of counsel under the two-prong test set forth in Strickland." (Citations omitted.) Ruiz v. State, 286 Ga. 146, 149 (2) (b) (686 SE2d 253) (2009).

The record shows that, during closing arguments, counsel for co-defendant Burks made the following statement:

> The next thing that happens in this investigation is Jarvis Green calls the detective on September 27th and tells him that he is in the

jail cell with Johnny McClendon and that my client is the driver but the police think it is his girlfriend. I would have loved to cross-examine Mr. McClendon on that statement, whether he made that statement, what he meant by that statement, if he said that statement at all.

Trial counsel objected, arguing that Burks' attorney had commented on McClendon's right to remain silent; however, counsel did not move for a mistrial at this time. At the motion for new trial hearing, trial counsel testified that he made a tactical decision not to move for a mistrial during closing argument. Specifically, counsel recalled that the State's key witness, Jarvis Green, was in custody at the time, and counsel did not want to risk a less effective second cross-examination of Green if he were released from custody prior to a new trial.

Though the trial court failed to make specific findings of fact with respect to this claim, it is evident from the record that trial counsel's strategic decision regarding a mistrial was not objectively unreasonable. To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). "A court considering a claim of ineffective assistance must

8

apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." (Citation omitted). Harrington v. Richter, 562 U.S. 86, 104 (IV) (131 SCt 770, 178 LEd2d 624) (2011). To overcome that presumption, McClendon must show that no reasonable counsel would have failed to move for a mistrial. See, e.g., Jones v. State, 292 Ga. 593 (7) (d) (740 SE2d 147) (2013); Hartsfield v. State, 294 Ga. 883, 888 (3) (b) (757 SE2d 90) (2014) ("The proper assessment is 'an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.'" (citing Harrington, 562 U.S. at 110)). Here, McClendon has failed to establish that trial counsel's strategic decision not to move for a mistrial was deficient performance. Accordingly, his ineffectiveness claim is without merit.

3.      McClendon further argues that the trial court erred in denying his motion to sever his trial from that of his two co-defendants. In non-death penalty cases, "a trial court has the discretion to grant or deny a severance in a joint trial." Ballard v. State, 297 Ga. 248, 255 (8) (773 SE2d 254) (2015). See also OCGA § 17-8-4. The three factors a trial court should consider when determining whether to grant or deny a motion to sever are:

> 1) whether the number of defendants will confuse the jury as to the evidence and the law applicable to each defendant; 2) whether, despite cautionary instructions from the court, there is a danger that evidence admissible against one defendant will be improperly considered against another defendant; and 3) whether the defenses of the defendants are antagonistic to each other or to each other's rights of due process.

Green v. State, 274 Ga. 686, 687-688 (2) (558 SE2d 707) (2002). "It is incumbent upon the defendant who seeks a severance to show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed." Id. at 688.

McClendon has failed make the required showing of prejudice. First, there is no indication that the jury confused the evidence or the law applicable to McClendon and his co-defendant as all three defendants were largely charged with the same offenses that stemmed from the same evidence and fact pattern. Further, the jury was instructed on mere association, mere presence, and parties to a crime and the jury returned a separate verdict for each defendant pursuant to the trial court's instruction. Next, contrary to McClendon's assertions, it is highly unlikely that the evidence admitted against his co-defendants was improperly considered against him, especially since there was overwhelming evidence that the defendants knew one another and acted in concert to murder

10

the victim. Finally, McClendon does not argue, nor does the record show, that the defenses of the co-defendants were antagonistic. Based on the foregoing, the trial court did not abuse its discretion in denying McClendon's motion to sever.

*Case No. S16A0700*

4. Burks contends that the trial court erred by admitting the hearsay statements of co-defendant McClendon at trial in violation of his Sixth Amendment right to confrontation. Prior to trial, Burks moved in limine to prevent Green from testifying regarding his jailhouse conversation with McClendon. The trial court denied Burks' motion. Green testified at trial, and McClendon did not. Burks now claims that the admission of McClendon's inculpatory statements was error because, he says, the State failed to show the existence of a conspiracy and because the State failed to establish the required indicia of reliability in violation of the Confrontation Clause. We disagree.

*A) Conspiracy Claim*

In his pre-trial motion, Burks relied upon former OCGA § 24-3-52[2] to

---

[2] Former OCGA § 24-3-52 states, in relevant part, as follows: "The confession of one joint offender or conspirator made after the enterprise is ended shall

11

argue that McClendon's jailhouse statements were inadmissible because they were made after the criminal enterprise had ended. However, Burks did not argue either prior to or during trial that the statements were inadmissible because a conspiracy did not exist at the time they were made, nor did Burks cite to any legal authority to support this position. Now, on appeal, Burks argues that the statements were inadmissible because the State failed to prove the existence of a conspiracy pursuant to former OCGA § 24-3-5[3].

Because Burks raises an issue on appeal that was not presented or ruled upon by the trial court, his argument is not preserved for review by this Court. See Higuera-Hernandez v. State, 289 Ga. 553, 555 (2) (714 SE2d 236) (2011) (Citation omitted.) ("Standard practice in Georgia has long required a party to make and obtain a ruling on an objection to evidence in the trial court, before or as the evidence is admitted, in order to preserve the objection for appeal, and standard practice also allows parties to raise on appeal only the same objections that were properly preserved below."). Moreover, prior to trial, Burks argued

be admissible only against himself." Because this code section was in effect at the time of Appellants' trial, and was relied upon by Burks in his pre-trial motion in limine, we analyze his claim under the former code section.

[3] "After the fact of a conspiracy is proved, the declarations by one of the conspirators during the pendency of the criminal project shall be admissible against all."

that the statements were inadmissible because the enterprise had ended before the conversation took place; this assertion acknowledges the existence of a conspiracy at the time the statements were made. See Franklin v. State, 298 Ga. 636, 639 (2) (784 SE2d 359) (2016) ("For purposes of the [co-conspirator] hearsay exception, a conspiracy is deemed to endure so long as the parties thereto attempt to conceal either the crime itself or the identity of the perpetrators."). See also Young v. State, 291 Ga. 627 (3) (732 SE2d 269) (2012); Allen v. State, 288 Ga. 263 (4) (702 SE2d 869) (2010). Consequentially, this claim is not preserved for appellate review.

*B) Indicia of Reliability*

Burks also argues, as he did below, that the trial court erred in admitting Green's hearsay testimony because the State failed to show the required indicia of reliability as established in Copeland v. State, 266 Ga. 664 (469 SE2d 672) (1996), and Dutton v. Evans, 400 U.S. 74 (91 SCt 210, 27 LE2d 213) (1970), therefore violating his Sixth Amendment right to confrontation. The State, however, argues that, in light of the decision by the United States Supreme Court in Whorton v. Bockting, 549 U. S. 406 (127 SCt 1173, 167 LE2d 1)

(2007), the "indicia of reliability" test established in <u>Copeland</u> is no longer good law. We agree with the State.

As we explained in co-defendant Franklin's appeal, "the <u>Dutton</u> paradigm is no longer applicable in light of <u>Crawford v. Washington</u>, 541 U.S. 36, 68-69 (124 SCt 1354, 158 LE2d 177) (2004), which held that the Confrontation Clause applies only to out-of-court statements that are *testimonial* in nature." (Emphasis added.) <u>Franklin</u>, 298 Ga. at 640. Accordingly, just as in <u>Franklin</u>, we will assess the alleged Confrontation Clause violation pursuant to <u>Crawford</u> and its progeny.

In <u>Crawford</u>, the United States Supreme Court overturned the "indicia of reliability" test as laid out in <u>Ohio v. Roberts</u>, 448 U. S. 56 (100 SCt 2531, 65 LE2d 597) (1980), holding that a Confrontation Clause violation occurs when a declarant is unavailable to be called as a witness, was not previously subject to cross-examination, and when the statements to be introduced at trial are "testimonial"[4] in nature. See also <u>Jackson v. State</u>, 291 Ga. 22, 24 (2) (727 SE2d 106) (2012) ("The Confrontation Clause imposes an absolute bar to

---

[4] "A statement is testimonial if its primary purpose was to establish evidence that could be used in a future prosecution." (Citations omitted). <u>Franklin</u>, 298 Ga. at 640.

14

admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-examine the declarant."). In other words, "[u]nder Roberts, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability." Whorton, 549 U.S. at 420. However, under Crawford, "the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability." Whorton, 549 U.S. at 420. Thus, the question of whether hearsay evidence violates the Confrontation Clause turns, not on indicia of reliability, but rather on whether the hearsay statement is testimonial.

Relying on United States Supreme Court precedent, this Court has held that statements properly admitted pursuant to the co-conspirator hearsay exception do not qualify as "testimonial" statements which implicate Sixth Amendment protections. See McKinney v. State, 281 Ga. 92, 95 (4) (635 SE2d 153) (2006) ("Statements admissible pursuant to the hearsay exception permitting the use of statements made in furtherance of a conspiracy are not 'testimonial' . . . Accordingly, the holding in Crawford is not applicable to the

15

admission of the statements of the co-conspirators made during the pendency of the conspiracy.") (citations omitted); *Favors v. State,* 296 Ga. 842 (2) (770 SE2d 855) (2015); Billings v. State, 293 Ga. 99 (4) (745 SE2d 583) (2013).

Here, the statements made by McClendon and testified to by Green were not testimonial and therefore did not violate the Confrontation Clause. Further, we agree with the State that the "indicia of reliability test" established by this Court in Copeland is no longer good law. We therefore disapprove of Copeland and its progeny in this regard.

5. Like McClendon, Burks argues that the trial court abused its discretion by failing to sever his trial from his co-defendants. For the reasons discussed in Section 3, supra, we disagree. Consequently, this claim has no merit.

*Sentencing of Both Defendants*

6. Finally, Burks has alleged that the trial court erred during sentencing by merging his two felony murder convictions into his malice murder charge instead of vacating them. While the evidence was sufficient to sustain Burks' convictions, we do find error in his sentences, as well as McClendon's sentences.

16

As noted in footnote 1, supra, Burks and McClendon were found guilty of malice murder, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. The trial court sentenced both men to life imprisonment for the malice murder conviction, five years suspended for possession of a firearm during the commission of a crime to run consecutively to malice murder, and another five years suspended for possession of a firearm by a convicted felon to run consecutively to the other weapons charge, for a total sentence of life plus ten years suspended. The trial court then purportedly merged the Appellants' felony murder counts and aggravated assault charges into their respective malice murder convictions. However, the felony murder counts did not "merge" but were vacated by operation of law. See Favors, 296 Ga. at 847-848 (holding that felony murder verdicts did not "merge" into a malice murder verdict, but were instead vacated by operation of law); Hurt v. State, 298 Ga. 51 (779 SE2d 313) (2015). Accordingly, we vacate both Burks' and McClendon's felony murder convictions. We do note that the trial court

17

properly merged both Appellants' aggravated assault charges into their malice murder convictions.  See Favors, 296 Ga. at 848; Hulett v. State, 296 Ga. 49 (2) (766 SE2d 1) (2014).

Judgments affirmed in part and vacated in part.  All the Justices concur.