S16A0849. TERRELL v. THE STATE.
(793 SE2d 411)

THOMPSON, Chief Justice.

Appellant Xzarious Terrell was convicted of felony murder, aggravated assault with a deadly weapon, criminal attempt to commit armed robbery, and possession of a firearm during the commission of

a felony in connection with the shooting death of victim Henry Wright, Jr.[1] His motion for new trial was denied, and on appeal, he challenges the sufficiency of the evidence and claims error in the trial court's admission of statements of a non-testifying co-indictee under the co-conspirator hearsay exception. Finding no reversible error, we affirm.

The evidence presented at trial authorized the jury to conclude that appellant and two co-indictees, Rodqucas Bowen and Moxtious Cain, planned to rob a drug or "trap" house operated by cousins Antonio and Datravious Fagin and others out of an apartment located in Fulton County. On the afternoon of April 9, 2009, Cain borrowed his girlfriend's green BMW 745 and drove appellant and Bowen to the apartment complex where the trap house was located. Cain remained in the car while the other two men walked toward the apartment. Bowen, who had been to the trap house before, knocked on the door. At that time, Antonio Fagin and Wright were the only people in the apartment and were unarmed.[2] In response to Bowen's knock, Wright, who worked as the trap house doorman, let Bowen inside after Antonio recognized him as a previous customer.

After selling Bowen marijuana in the apartment living room, Antonio returned to the adjacent kitchen area where he was cooking chicken. A minute or two later, he heard two or three gunshots in the living room and, looking over the counter into that room, saw appellant, whom he did not recognize but described as a tall, light-skinned

---

[1] The crimes occurred on April 9, 2009. A Fulton County grand jury indicted appellant, along with co-indictees Rodqucas Bowen and Moxtious Cain, on charges of murder, felony murder (two counts), aggravated assault with a deadly weapon (two counts), criminal attempt to commit armed robbery, possession of a firearm during commission of a felony, and possession of a firearm by a convicted felon. Appellant was tried separately before a jury in June 2011. During trial, one of the felony murder counts and the possession of a firearm by a convicted felon count were nolle prossed. Thereafter, the jury found appellant guilty of felony murder, aggravated assault with a deadly weapon (two counts), criminal attempt to commit armed robbery, and possession of a firearm during commission of a felony. On July 6, 2011, appellant was sentenced to life imprisonment for felony murder predicated on the underlying felony of aggravated assault with a deadly weapon. One count of aggravated assault with a deadly weapon count was merged with the felony murder count for sentencing purposes, see *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and appellant was sentenced to ten years consecutive on the remaining aggravated assault count. Appellant also received a consecutive ten-year sentence for his criminal attempt to commit armed robbery conviction, and a five-year consecutive sentence on his conviction for possession of a firearm during the commission of a felony. Appellant's motion for new trial was filed July 14, 2011 and amended on April 22, 2014. Following a hearing held April 22, 2014, appellant's motion for new trial was denied by order entered June 12, 2014. Appellant filed a notice of appeal on June 23, 2014, and his appeal was docketed in this Court for the April 2016 term and submitted for a decision on the briefs.

[2] The guns normally kept in the trap house had been removed earlier that day and stored in a nearby parked car after police were seen patrolling in the area.

man with short, thin dreadlocks or braids, standing by the apartment's front door pointing a gun at him. As Bowen entered the kitchen area with a gun visible in his waistband, Antonio ran out the apartment's back door. Subsequently, appellant and Bowen were seen running from the front of the apartment. Appellant ran straight to the car where Cain was waiting and the two men drove away from the complex leaving Bowen behind. Meanwhile, the victim staggered out the front door behind appellant and Bowen and collapsed on the ground.

Antonio testified that as he ran from the area he saw appellant leaving the complex in a green BMW 745. After calling Datravious and others to come to his aid, Antonio spotted Bowen still in the complex, and the group of men moved to confront him. Bowen, however, threatened the unarmed men with his gun and was able to escape by running to a nearby gas station and carjacking a woman to obtain her car. Although police and emergency personnel were quickly on the scene, the victim, who had been shot in his arm and chest, died soon after from his chest wound.

During the subsequent investigation, police received information naming appellant, along with Rodqucas Bowen and Moxtious Cain as being involved in the shooting. Antonio and Datravious Fagin each identified Bowen from separate photographic lineups, and the police thereafter interviewed Cain's girlfriend, Karimah Tarver. In a recorded statement, Karimah stated to police that Cain told her that appellant and Bowen had planned the robbery; that he drove them to the scene of the crime in her green BMW 745 but remained in the car while the other two went inside the apartment; and, that, following the shooting, as soon as appellant got back to the car, he and appellant drove away without waiting for Bowen. Karimah described appellant as having dreadlocks and also told police that her cousin, Marcadia Tarver, was appellant's girlfriend. The police then interviewed Marcadia who likewise agreed to have her statement recorded. According to Marcadia, appellant told her about the planned robbery which called for Bowen to gain entrance to the trap house first, after which appellant would follow. She stated that appellant informed her that something went wrong and shooting ensued.

Following his arrest, appellant gave a videotaped statement to police in which he admitted, among other things, that he was with Cain in Cain's girlfriend's green BMW 745 at the apartment complex where the crimes occurred during the shooting. He claimed that on the day of the murder Cain picked him up to buy some marijuana and that, while they were driving, Cain received a call from Bowen asking to be picked up. Appellant stated that he and Cain then drove to the apartment complex to get Bowen, but left without him after hearing

gunshots. Despite putting himself at the scene, appellant denied any involvement in the shooting.

At trial, both Karimah and Marcadia testified that they lied in their police interviews because they were afraid of the police and were angry at their boyfriends. The women recanted their claims that appellant and Cain told them about the crimes and testified instead that they learned of the incident by watching television. Their recorded statements, however, were played at trial and used for impeachment purposes by the State.

1. Appellant contends that the evidence identifying him as a participant in the shooting was insufficient to prove his guilt beyond a reasonable doubt under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). We disagree.

In reviewing the sufficiency of the evidence on appeal, we construe the evidence presented in the light most favorable to the verdict, and neither reweigh it nor determine witness credibility. See *Browner v. State*, 296 Ga. 138, 140 (1) (765 SE2d 348) (2014). Although to warrant a conviction based solely on circumstantial evidence, the evidence must exclude every other reasonable hypothesis save that of the guilt of the accused, whether the evidence excludes every other reasonable hypothesis is a question for the jury and this Court will not disturb the jury's finding unless the verdict is unsupportable as a matter of law. See *Brown v. State*, 291 Ga. 892, 895 (734 SE2d 23) (2012).

Here, there was both direct and circumstantial evidence showing appellant's involvement in the crimes charged. Based on this evidence, the jury was authorized to find that appellant and Bowen went to the apartment to rob the occupants of money and drugs; that appellant and Bowen were armed; that appellant pointed his gun at Antonio; that either appellant or Bowen fired the shots which injured and ultimately killed Wright; that appellant left the apartment complex after the shooting in the green BMW 745 driven by Cain; and, that appellant admitted to his girlfriend, Marcadia, that he was involved in the attempted robbery and subsequent shooting. As summarized above, we conclude the evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes of which he was convicted either as a direct participant or as a party to the crimes charged pursuant to OCGA § 16-2-20 (a).[3] See *Jackson v. Virginia*, 443 U. S. at 319. See also *Robinson v. State*, 298 Ga. 455 (1) (782 SE2d 657) (2016).

---

[3] OCGA § 16-2-20 (a) provides that "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."

Although appellant asserts that the evidence against him consisted of nothing but rumor and hearsay, the prior inconsistent statements made by the Tarver cousins during their police interviews constituted substantive evidence upon which the jury was entitled to rely. See *Rivers v. State*, 296 Ga. 396, 403 (9) (768 SE2d 486) (2015) (prior inconsistent statements by a witness can be used at trial both to impeach the witness and as substantive evidence). It was up to the jury to decide which was more credible, the Tarvers' statements to the police or their trial testimony.

2. Appellant contends that the trial court erred in admitting the statements of his non-testifying co-indictee, Moxtious Cain, through the testimony of Cain's girlfriend, Karimah Tarver. Specifically, he argues that the trial court erred in admitting Karimah's statements under the co-conspirator hearsay exception formerly codified at OCGA § 24-3-5,[4] asserting that the State failed to establish his involvement in the conspiracy exclusive of Cain's declarations.

In effect at the time of appellant's trial, former OCGA § 24-3-5 states that "[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." However, in order for co-conspirator hearsay testimony to be admissible, the State must establish, prior to the close of evidence, a prima facie case of conspiracy apart from the co-conspirator's statement. See *Williams v. State*, 293 Ga. 750 (2) (749 SE2d 693) (2013).

"A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy. . . ." OCGA § 16-4-8.

> In order for a conspiracy to exist, "there must be an agreement between two or more persons to commit a crime." [Cit.] Such agreement need not be express, nor does it require a "meeting of the minds" to the same degree necessary to form a contract; all that is required is a tacit mutual understanding between persons to pursue a common criminal objective. [Cits.]

*Griffin v. State*, 294 Ga. 325, 327 (751 SE2d 773) (2013). "For purposes of the hearsay exception, a conspiracy is deemed to endure so long as the parties thereto attempt to conceal either the crime itself or the

---

[4] Because appellant's trial occurred prior to the effective date of the new Georgia Evidence Code, former OCGA § 24-3-5 applies.

identity of the perpetrators. [Cit.]" *Franklin v. State*, 298 Ga. 636, 639 (784 SE2d 359) (2016). A conspiracy may be proven by any direct or circumstantial evidence which discloses a common design to act in concert for the accomplishment of an unlawful purpose. See *Williams*, 293 Ga. at 753. And, to obtain the admission of an inculpatory out-of-court statement under former OCGA § 24-3-5, the prosecution need only show that it was made by a co-conspirator during and in furtherance of an ongoing conspiracy with the defendant. See *Franklin*, 298 Ga. at 639; *Grimes v. State*, 296 Ga. 337, 346 (2) (a) (766 SE2d 72) (2014).

Here, evidence of the conspiracy independent of Cain's declarations was provided by appellant's admissions to his girlfriend, Marcadia, during the concealment phase of the conspiracy while appellant and his co-conspirators were still at-large and the investigation was ongoing. Further, at least two witnesses testified to seeing a man with dreadlocks at the crime scene along with Bowen. Their description of a man with short dreads is consistent with photographs of appellant taken soon after the robbery and admitted as evidence. Finally, Antonio's testimony that the man with the short dreads who pointed the gun at him in the apartment left the complex in a green BMW 745 corresponds with appellant's own admission that he left the apartment complex in a green BMW 745 driven by Cain shortly after the shooting. Under the circumstances, we find the State presented sufficient evidence to establish a prima facie case of a conspiracy between appellant and Cain independent of Cain's statements, and no error in the trial court's admission of Karimah's statement pursuant to the co-conspirator hearsay exception set forth in former OCGA § 24-3-5.

Even assuming the admission of this statement was improper, we conclude any such error was harmless given that Cain's statements to Karimah were merely cumulative of appellant's statements to Marcadia which were properly admitted. See *Navarrete v. State*, 283 Ga. 156, 160 (656 SE2d 814) (2008).

3. In his final enumeration of error, appellant, who is now represented by new appellate counsel, asks this Court to remand his case to the trial court to obtain trial counsel's testimony with respect to his claim of ineffective assistance of trial counsel, a claim raised by his first appellate counsel on motion for new trial.[5]

Claims of trial counsel ineffectiveness must be raised at the earliest practicable opportunity. See *Lewis v. State*, 291 Ga. 273, 281

---

[5] Appellant has filed a separate Motion to Remand in this case in which he makes the same argument as that contained in this enumeration of error. This motion hereby is denied.

(731 SE2d 51) (2012); *Ruiz v. State*, 286 Ga. 146, 148 (1) (b) (686 SE2d 253) (2009). Only where no opportunity existed for the defendant to raise an ineffectiveness claim prior to appeal have cases been remanded for a hearing. See, e.g., *Green v. State*, 295 Ga. 108, 112 (757 SE2d 856) (2014) (recognizing that the defendant whose trial counsel represented him on motion for new trial had no opportunity to raise an ineffective assistance of counsel claim prior to appeal and remanding the case for a hearing solely on this issue). Here, appellant not only had the opportunity to raise a claim of ineffective assistance of trial counsel on motion for new trial, but he actually raised this claim in an amended motion for new trial following the appointment of new counsel. As a result, this claim has already been raised and adjudicated by the trial court and appellant is not entitled to a remand for further consideration of this issue below.[6] See *Lewis*, 291 Ga. at 281-282. See also *Wilson v. State*, 286 Ga. 141, 143-144 (686 SE2d 104) (2009) (when issue of ineffectiveness of trial counsel has been raised on motion for new trial, any claims of ineffective assistance of trial counsel not raised at that time are waived and remand is improper).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 7, 2016.

*Michael W. Tarleton*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Arthur C. Walton, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Aimee S. Sobhani, Assistant Attorney General*, for appellee.

---

[6] We note that appellant only seeks permission on remand to supplement the record with trial counsel's testimony in support of his claims of ineffective assistance of trial counsel raised on motion for new trial and he has not raised on appeal an ineffective assistance of appellate counsel claim against his first appellate counsel. Compare *Lewis*, 291 Ga. at 282 (remanding case for a hearing on the issue of ineffective assistance of first appellate counsel); *Wilson v. State*, 286 Ga. 141, 144-145 (686 SE2d 104) (2009) (recognizing that ineffective assistance of appellate counsel claims not premised on procedurally barred claims can be raised for the first time on appeal by new appellate counsel and are not limited to habeas review).