301 Ga. 200
FINAL COPY

S17A0644.  RABON v. THE STATE.

H<small>UNSTEIN</small>, Justice.

Appellant Travis Santell Rabon was tried and convicted of numerous offenses in connection with the murder of Keira Avant and the rape of a second victim.[1]  Rabon appeals, claiming three instances of trial court error.  For the reasons that follow, we affirm.

---

[1] On October 6, 2009, a Rockdale County grand jury indicted Rabon for one count of malice murder (Count 1); one count of felony murder predicated on rape, aggravated assault and aggravated battery (Count 2); two counts of rape (Counts 3 and 7); one count of aggravated assault with intent to rape (Count 4); three counts of aggravated assault with an offensive weapon (Counts 5, 8 and 9); two counts of aggravated battery (Counts 6 and 12);  one count of kidnapping (Count 10); and one count of aggravated sodomy (Count 11).

Following a trial conducted January 25-31, 2012, a jury found Rabon guilty of all charges, except the charges in Counts 3 and 4, for which he was acquitted.  On February 16, 2012, the trial court imposed three life sentences for Counts 1, 10 and 11; a life without parole sentence for Count 7; and an additional 20-year concurrent sentence for Count 8.  All other counts were either merged or vacated by operation of law.

Rabon filed a motion for new trial on March 7, 2012, which he amended on November 30, 2015, alleging, inter alia, that his life without parole sentence for rape was illegal and void.  After a hearing, the trial court granted the amended motion for new trial in part on February 5, 2016, and modified Rabon's life without parole sentence for Count 7 to a life sentence.  The trial court denied the remaining aspects of Rabon's motion for new trial on February 19, 2016.  Rabon timely filed a notice

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. In the early morning hours of December 29, 2008, police officers responded to a disturbance call at Lake Saint James Apartment Complex in Rockdale County, Georgia. Upon their arrival, witnesses directed the officers to Rabon's apartment. After several knocks, Rabon opened the door holding a mop. The officers immediately noticed blood on the wall, which Rabon attributed to being bitten by his dog. Just then, an extremely upset young woman appeared from the bathroom yelling for help. Her head was wrapped in a blood soaked cloth and she was clothed only in a damp, bloodied bra and sweat pants.

Once inside the apartment, law enforcement saw blood on the walls and floor, as well as blood droplets leading to the back of the apartment where they located an unconscious Keira Avant on the floor of the bedroom with a cord around her neck. Her clothing had been pulled above her waist and her underwear had been removed. Law enforcement recovered numerous items

of appeal to this Court. The appeal was docketed to the term of this Court beginning in December 2016 and was thereafter submitted for decision on the briefs.

from the residence including a handgun and a barbell. DNA testing later revealed the presence of the surviving victim's blood on both items.

EMS immediately treated the surviving victim for swelling and numerous contusions and lacerations to her head and throat. She told the paramedics that she had been pistol whipped in the head, strangled and raped. She was later life-flighted to Grady Hospital in Atlanta where a sexual assault examination revealed redness on her vaginal wall, which was consistent with a sexual assault. Swabbings were also taken from the surviving victim's vagina and anus; Rabon's DNA was found on the latter.

Meanwhile, Avant was taken to Rockdale County Hospital where she was determined to be brain dead. After Avant's treating physician concluded that she would not recover from her injuries, her family removed her from life support, and Avant subsequently died on December 31, 2008. An autopsy confirmed that Avant's cause of death was a lack of blood and oxygen to the brain due to strangulation.

During their investigation, law enforcement learned that, on the morning of December 29, 2008, Avant received a phone call from Rabon offering to lend her money so that she could obtain her bartender's license. After Avant

3

accepted the loan offer, Rabon requested she travel to his apartment to pick up the money. Later in the day, Avant went inside Rabon's apartment alone while her three friends waited in the parking lot. After an extended period of time, the women became concerned, so one of them went to check on Avant. After she knocked on the door, Rabon yanked the woman inside, held a gun to her head, told her she was going to watch him have sex with Avant, and demanded she remove her clothing. The woman pleaded with Rabon not to kill her and pretended to take off her clothes, then ran to the door. Rabon pulled her back and the pair began to struggle, during which Rabon hit her in the head multiple times with a gun, bit her, and choked her to the point of unconsciousness.

Rabon then dragged the victim to the bathroom, forced her to have sex with him and ordered her to perform oral sex on him, which she did out of fear for her life. After the rape, Rabon dragged the second victim into the master bedroom, where an unresponsive Avant was on the floor with a cord tied around her neck. Her top was pulled up and her pants and boots pulled down. As the second victim screamed and begged for her life, Rabon made her lay on top of Avant so he could have vaginal sex with her and anal sex with Avant

4

interchangeably. Shortly thereafter, deputies began knocking on Rabon's door.

Rabon spoke with police and gave five different versions of what had occurred, eventually implicating himself in the crimes. The State also presented similar transaction evidence at trial from Rabon's former girlfriend, wherein she testified that Rabon had hit and choked her and raped her in the past, an allegation he admitted in a handwritten letter, which was also introduced into evidence at trial.

Rabon testified on his own behalf; he denied choking Avant, explained that he engaged in consensual sex with both women, and claimed he acted in self-defense after the women attacked him.

1. Though not raised by Rabon, we find that there was sufficient evidence to enable a rational trier of fact to conclude beyond a reasonable doubt that Rabon was guilty of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. The record shows that Rabon filed motions requesting funds for investigators and experts, attaching an affidavit of indigence as an exhibit to each motion. He also filed two motions for a continuance based upon a lack

of funds to proceed with his defense. The trial court denied both of Rabon's motions for funds after holding hearings[2] on the same and, in an order denying his second motion for continuance, the trial court summarized its findings regarding Rabon's indigent status as follows:

> While the Defendant contends that he was delayed in obtaining expert witnesses due to the limited financial resources of the Defendant, counsel for the Defendant has been aware since January 8, 2010, when this Court first denied the Defendant funds for Investigative Services, that the Court did not find the Defendant indigent based on the substantial lump sum amount of attorney fees the Defendant had previously paid defense counsel. Defense counsel has now decided, almost three years after being hired, to apply a portion of the monies paid by the Defendant to obtaining expert witnesses. This could have been done previously. Instead, defense counsel filed additional motions requesting that the Defendant be declared indigent, and when each of these motions were denied, [sic] and waited until the eve of trial to take action.

Rabon raises three enumerations of error concerning the trial court's denial of his request for indigent status and public funds to hire experts and investigators in preparation for trial. We will address each in turn.

(a) *Hearing on Indigent Status*

---

[2] One of the pleadings in the record indicates that the trial court held two ex parte hearings on Rabon's motions for funds, one on January 5, 2010, and one on February 25, 2011. While the February 2011 hearing was transcribed, the record is silent as to whether the January 2010 hearing was taken down.

Rabon first alleges that the trial court erred in failing to hold a separate, formal hearing to determine if he was indigent.  However, Rabon did not raise an objection to this alleged error in the trial court; therefore, this issue is not preserved for appellate review.  See McClendon v. State, 299 Ga. 611, 616 (4) (a) (791 SE2d 69) (2016) ("Because [appellant] raise[d] an issue on appeal that was not presented or ruled upon by the trial court, his argument is not preserved for review by this Court.").

(b)   *Denial of Indigent Status*

Rabon next argues that the trial court erred in finding that he did not qualify for indigent status.  Rabon concedes, however, that this purely factual finding lies within the sound discretion of the trial court and is not subject to appellate review.  See OCGA § 9-15-2 (a) (2) (". . . The judgment of the court on all issues of fact concerning the ability of a party to pay costs or give bond shall be final"); Roberson v. State, 300 Ga. 632 (797 SE2d 104) (2017); Penland v. State, 256 Ga. 641 (352 SE2d 385) (1987).

(c)   *Denial of Motion for Funds*

Finally, Rabon contends that the trial court erred in denying his "motions for investigative services and experts" because, though his family had paid for

his defense, Rabon himself was indigent. "Absent discretionary abuse, a trial court's ruling on a criminal defendant's motion for the appointment of an expert witness will be upheld." (Citations omitted.) Thomason v. State, 268 Ga. 298, 310 (7) (486 SE2d 861) (1997).

The record supports the court's denial of funds. Rabon's family paid counsel approximately $79,900 for his representation of Rabon throughout trial, which included monies for the hiring of a psychologist and a psychiatrist, both of whom were called as expert witnesses in Rabon's case-in-chief. Trial counsel testified at the motion for new trial hearing that he used between $15,000 and $20,000 of the money he was paid in order to hire the two mental health professionals and an independent investigator, who was also identified as a potential witness for the defense at trial.

Further, although Rabon alleges that the trial court erred in denying his request for funds, he did not present any evidence at the hearing on his motion for new trial showing which additional experts he needed for trial nor did he establish how their aid or potential testimony could have impacted the outcome of his trial had funding been granted. Based on the foregoing, we find that the trial court did not abuse its discretion in denying Rabon's request.

Judgment affirmed.  All the Justices concur.


Decided May 15, 2017.

Murder. Rockdale Superior Court. Before Judge Irwin.

Melinda F. Johnson, for appellant.

Richard R. Read, District Attorney, Roberta A. Earnhardt, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary C. Greaber, Jason M. Rea, Assistant Attorneys General, for appellee.